IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| MONTWAIN CARTER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>HEALTH INSURANCE KING AGENCY, LLC,<br><br>Defendant. | No. 3:25-cv-00005-SHL-WPK<br><br>**ORDER DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |

Plaintiff Montwain Carter, who is on the National Do-Not-Call Registry, alleges that he received a telephone solicitation from someone named "Timothy Reese" on behalf of Defendant Health Insurance King Agency, LLC ("Health Insurance King"), in violation of the Telephone Communications Privacy Act ("TCPA"). Health Insurance King admits that it has an employee named "Timothy Reese" but claims to have no record of the phone call in question being made. It further asserts, in any event, that Reese would have been exceeding the scope of his authority if he made it. Health Insurance King therefore moves to dismiss for lack of personal jurisdiction, as it has no other relevant contacts with the State of Iowa. (ECF 8.)

At this stage, the Court must resolve factual disputes in Carter's favor. Accordingly, it concludes that Carter has presented sufficient evidence that (a) Reese made the call in question and (b) did so with either actual or apparent authority from Health Insurance King. The Court therefore DENIES Health Insurance King's Motion to Dismiss for Lack of Personal Jurisdiction. The denial is, however, WITHOUT PREJUDICE given that Health Insurance King may develop additional facts that change the personal jurisdiction analysis.

I.     BACKGROUND.

Because neither side has requested an evidentiary hearing, the Court views the facts in the light most favorable to the plaintiff. *See Pederson v. Frost*, 951 F.3d 977, 979 (8th Cir. 2020). Carter resides in the Southern District of Iowa and has a cellular telephone number with the area code "563," which serves Eastern and Southern Iowa. (ECF 11-1, ¶¶ 3, 9; ECF 1-1, p. 1.) Carter's phone number is not associated with a business or business account. (ECF 11-1, ¶ 5.) Instead, it is registered to his residential address in Iowa. (Id., ¶ 6.) His phone number has been registered on the National Do-Not-Call Registry since October 2024. (Id., ¶ 3.)

On three occasions subsequent to October 2024, Carter received phone calls from phone numbers that he believes are affiliated with Health Insurance King. (ECF 1, ¶¶ 27, 34.) The first occurred on November 25, 2024, and came from phone number 563-888-1294. (Id., ¶¶ 27–28.) Carter did not answer, and the caller did not leave a message. (Id., ¶ 28.) The second occurred on November 26, 2024, and came from phone number 563-888-1567. (Id., ¶¶ 27, 29.) Carter did not answer, and the caller did not leave a message. (Id., ¶ 29.) The third occurred on December 2, 2024, and came from phone number 563-888-8621. (Id., ¶ 30.) This time, Carter answered and spoke to someone who made a solicitation for health insurance. (Id.) The person collected Carter's age, zip code, and information about his insurance. (Id.)

The caller on the third call identified himself as "Timothy Reese" and said he worked for "Health Insurance King Agency." (Id., ¶ 31; ECF 11-1, ¶ 12.) Reese is licensed to sell insurance in Iowa and has a listed business address in Mansfield, Texas. (ECF 11-1, ¶ 14.) There is only one "Timothy Reese" licensed to sell insurance in Iowa. (Id., ¶ 15.) During the call, Reese provided Carter with the website "healthinsuranceking.com," which is affiliated with Health Insurance King. (Id., ¶ 16.)

When Carter answered the third call, there was a brief pause and delay on the line before Reese began speaking. (ECF 1, ¶ 36.) Moreover, as to the two unanswered calls, no one left messages or otherwise provided any indication of a human having initiated the call. (Id., ¶ 37.) Accordingly, Carter asserts that Health Insurance King used automated marketing software to place the calls. (Id., ¶ 38.) More specifically, Carter alleges that Health Insurance King "mass-dials calls indiscriminately and incessantly, including to numbers on the Do Not Call Registry." (Id., ¶ 41.) Carter never consented to these calls and alleges that they violated his privacy. (Id., ¶¶ 42–43.) He brings claims on behalf of himself and a class of similarly situated individuals under the TCPA, 47 U.S.C. § 227(c). (Id., ¶¶ 46, 62–65.)

Health Insurance King moves to dismiss for lack of personal jurisdiction. (ECF 8.) According to a declaration from Ygnacio Subia, a "supervisor for Health Insurance King, LLC," no one associated with the entity made the calls of which Carter complains. (ECF 8-1, ¶¶ 1, 3.) Subia says none of the phone numbers identified by Carter are owned by or associated with Health Insurance King, and that the entity does not own *any* numbers with the "563" area code. (Id., ¶ 4.) Subia further reports that Health Insurance King's Customers Relations Management ("CRM") database does not reflect any phone calls from Health Insurance King to any phone numbers with

a "563" area code on the dates in question. (Id., ¶ 5.) Subia states that Health Insurance King does not initiate outgoing calls to non-customers, period. (Id., ¶ 6.) Instead, at most, the entity initiates outgoing calls to existing customers. (Id.)

Subia admits that Health Insurance King has an employee named "Timothy Reese" but says the calls could not have initiated with him from the Health Insurance King system for the reasons stated above. (Id., ¶ 8.) If Mr. Reese placed such a call—which Health Insurance King disputes—he would have been acting outside the scope of his authority. (Id., ¶ 9.) According to Subia, Health Insurance King prohibits employees from making calls to non-customers precisely because the entity does not want to call anyone without consent. (Id.)

## II. LEGAL ANALYSIS.

### A. Legal Background and Standards.

"Personal jurisdiction can be specific or general." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). Carter does not argue that the Court has general jurisdiction over Health Insurance King, instead focusing on specific jurisdiction. "Specific personal jurisdiction can be exercised by a federal court in a diversity suit only if authorized by the forum state's long-arm statute and permitted by the Due Process Clause of the Fourteenth Amendment." *Id.* "Because Iowa's long-arm statute expands Iowa's jurisdictional reach to the widest due process parameters allowed by the United States Constitution, our inquiry is limited to whether the exercise of personal jurisdiction comports with due process." *Id.*

"Due process requires that the defendant purposefully establish minimum contacts in the forum state such that asserting personal jurisdiction and maintaining the lawsuit against the defendant does not offend traditional conceptions of fair play and substantial justice." *Hawkeye Gold, LLC v. China Nat'l Materials Indus. Imp. & Exp. Corp.*, 89 F.4th 1023, 1032 (8th Cir. 2023). In other words, "[t]he defendant . . . must take 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.'" *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (second alteration in original) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The act cannot be "random, isolated, or fortuitous." *Id.* (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)). The defendant must have "deliberately 'reached out beyond' its home." *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)); *see also Fastpath*, 760 F.3d at 820–21 (defendant's contacts with forum state must cause it to "reasonably anticipate being haled into court there" (citation omitted)). The Court's inquiry is on contacts "the defendant

3

*himself* creates," as opposed to contacts between the plaintiff and forum. *Fastpath*, 760 F.3d at 821 (quoting *Walden*, 571 U.S. at 284). Also, plaintiff's claims must "arise out of or relate to [those] contacts." *Kendall Hunt Publ'g Co. v. Learning Tree Publ'g Corp.*, 74 F.4th 928, 930 (8th Cir. 2023) (alteration in original) (quoting *Ford Motor Co.*, 592 U.S. at 359)).

Courts analyze five factors in assessing minimum contacts: "(1) the nature and quality of [defendant's] contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." *Hawkeye Gold, LLC*, 89 F.4th at 1032 (alteration in original). The first three factors take precedence over the last two, which "carry less weight and are not dispositive." *Kaliannan v. Liang*, 2 F.4th 727, 733 (8th Cir. 2021).

Following a defendant's timely motion under Federal Rule of Civil Procedure 12(b)(2), the plaintiff has the burden to establish the existence of personal jurisdiction. *See Hawkeye Gold, LLC*, 89 F.4th at 1030. "[T]his burden does not shift because the defendant challenges jurisdiction." *Id.* To survive a timely motion to dismiss, a plaintiff must "make a prima facie showing that personal jurisdiction exists by pleading sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *Id.* Unlike a motion to dismiss for failure to state a claim, the Court may consider a larger pool of relevant documents in determining if jurisdiction exists, such as affidavits and other exhibits. *See Pederson*, 951 F.3d at 979. When the Court does not hold an evidentiary hearing, it views the facts in the light most favorable to Plaintiffs. *Id.*

B. The Court DENIES Health Insurance King's Motion to Dismiss.

Health Insurance King acknowledges—correctly—that a single phone call to the forum state is enough to establish personal jurisdiction when the plaintiff brings a cause of action under the TCPA arising directly out of that call. "[M]ultiple courts have found calls or text messages to a phone number affiliated with a particular state that violate the TCPA sufficient to satisfy the [purposeful direction] test for a court of that state to exercise personal jurisdiction over the defendant." *Keim v. ADF MidAtlantic, LLC*, 199 F. Supp. 3d 1362, 1370 (S.D. Fla. 2016) (collecting cases). It does not matter whether the recipient of the call was actually in the forum state at the time of the call. *See Lowe v. CVS Pharmacy, Inc.*, 233 F. Supp. 3d 636, 645 (N.D. Ill. 2017). Accordingly, the Court need not engage in a detailed examination of the five minimum contacts factors because the contacts here are sufficient.

Health Insurance King instead focuses on factual questions: whether Timothy Reese made the phone call in question and, if so, whether he exceeded the scope of his authority when he did so. Health Insurance King does not, however, provide a declaration from Reese himself, instead submitting one from Subia, a "supervisor" with the entity, who avers that Health Insurance King's internal records do not show a phone call to the "563" area code on the dates in question. Subia further states that Health Insurance King's policies do not permit employees to make calls to non-customers like Carter. Health Insurance King does not ask for an evidentiary hearing, although it acknowledges that limited discovery might be appropriate into the issue of personal jurisdiction.

For two reasons, the Court concludes that Carter has met his burden of proving the existence of personal jurisdiction, notwithstanding the evidence submitted by Health Insurance King regarding Reese's authority (or lack thereof) to make the call. First, on the baseline question of whether Reese placed the calls, the Court must resolve factual disputes in Carter's favor. *See Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) ("At the motion stage, the action should not be dismissed for lack of jurisdiction if the evidence, viewed in the light most favorable to [the plaintiff], is sufficient to support a conclusion that the exercise of personal jurisdiction over [the defendant] is proper."). Accordingly, Carter's declaration stating that he received the calls from someone who identified himself as "Timothy Reese" with "Health Insurance King" trumps Subia's declaration stating that Health Insurance King's internal records show no such call. To be sure, the factfinder may decide down the road that Carter is wrong. For now, however, the legal standard allows him to carry the day.

Second, the Court rejects Health Insurance King's argument that Carter has not offered sufficient facts to establish that Reese had actual or apparent authority to make the call. It is undisputed that Reese is an employee of Health Insurance King and licensed to sell insurance in the State of Iowa. When these facts are combined with the substance of the call—a solicitation for health insurance—Carter has offered sufficient facts, viewed in the light most favorable to him, to establish that Reese acted within the scope of his actual or apparent authority from Health Insurance King when he placed the call. *See, e.g.*, *Myers v. Bennett L. Offs.*, 238 F.3d 1068, 1073 (9th Cir. 2001) (holding that district court erred in granting motion to dismiss for lack of personal jurisdiction where plaintiff made prima facie showing that defendant's employee acted within the scope of his actual or apparent authority).

The cases cited by Health Insurance King are not to the contrary. In several instances, courts have dismissed TCPA cases for lack of personal jurisdiction where the undisputed facts showed that the phone calls in question were made by a third party, not the defendant. *See, e.g.*, *Callier v. Wide Merch. Inv., Inc.*, 671 F. Supp. 3d 736, 743 (W.D. Tex. 2023) ("[T]his case does arise out of the forum-related contacts of the phone calls and text messages. However, they are not the Defendants' contacts, the calls and messages came from Synergy [a third party]."); *Cunningham v. Autoguard Advantage Corp.*, No. 3:23-CV-00238-FDW-SCR, 2024 WL 818381, at *7 (W.D.N.C. Feb. 27, 2024) ("While the Court must draw all *reasonable* inferences in Plaintiff's favor, nothing in the record before the Court connects Defendants . . . to these *calls*—allegedly in violation of the TCPA—made by a distinct entity: 'AAP.'"). These cases are inapposite here because Carter's evidence shows that Health Insurance King's own employee placed the calls in question. The company clearly has the ability to control an employee's behavior in a way that the defendants in the cases cited by Health Insurance King did not.

In asserting otherwise, Health Insurance King argues that Carter "has no evidence" of the elements necessary to hold Health Insurance King vicariously liable for Reese's acts. (ECF 14, p. 2 (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 527–28 (1999)).) This is an overstatement. Carter has presented evidence—and Health Insurance King *admits*—that Reese is one of Health Insurance King's employees. Further, Carter has established that Reese is licensed in the State of Iowa to do exactly what Reese allegedly did: solicit customers for health insurance. Accordingly, Carter has unquestionably presented "evidence" that Reese had actual or apparent authority from Health Insurance King to place calls to solicit customers for health insurance.

Granted, Health Insurance King has offered rebuttal evidence indicating that Reese exceeded his authority if he placed the calls in question. To that end, Health Insurance King argues that Carter "could not possibly have the necessary personal knowledge to testify as to Reese's employment relationship." (Id.) This is exactly why the governing legal standard is so important. Without discovery, it is difficult to understand what more a plaintiff like Carter could do to establish personal jurisdiction in a TCPA case beyond asserting (a) that he received a phone call directed to the forum state (b) from an insurance producer employed by Health Insurance King (c) for the purpose of trying to sell him insurance from Health Insurance King. Accordingly, this evidence is sufficient at this stage to make a prima facie case that personal jurisdiction exists because it supports a "reasonable inference" that Health Insurance King is subject to such

jurisdiction. *See Hawkeye Gold, LLC*, 89 F.4th at 1030. It follows that the Court must deny Health Insurance King's motion to dismiss.

   C. *The Court Will Not Narrow the Scope of Discovery.*

Health Insurance King's final argument, made in the alternative, is that the Court should limit discovery to a "handful of document requests and interrogatories" and "short deposition[s]" of a few witnesses narrowly focused on the jurisdictional issue. (ECF 14, p. 5.) The Court declines to do so. If, as Health Insurance King argues, Reese either did not make the phone call in question or acted outside the scope of his authority in doing so, Carter and his counsel will have little incentive to take broad discovery. At best, they would have to argue for class-wide relief based on Reese having apparent (but not actual) authority to make telephone solicitations. Indeed, the three most likely outcomes are: (i) Reese did not make the phone calls; (ii) Reese made the phone calls but exceeded his actual or apparent authority in doing so; or (iii) Reese made the phone calls but did not exceed his actual and/or apparent authority. In scenarios (i) and (ii), it does not appear that Carter or any other member of the putative class would have a viable claim against Health Insurance King. In scenario (iii), Carter and the other members of the class likely would have viable claims (assuming, of course, that Carter could satisfy the other elements of the TCPA). Either way, the issue of personal jurisdiction is sufficiently intertwined with the issues of class certification and the merits to make it unnecessary to segment discovery. If Carter can establish personal jurisdiction and has a viable claim (scenario (iii)), he almost certainly will try to bring it on behalf of an entire class; if he doesn't (scenarios (i) or (ii)), he won't.

One final note. Health Insurance King alleges (ECF 28) that early discovery has revealed facts that cast doubt on Carter's candor in his original pleading and declaration in connection with the motion to dismiss. In essence, Health Insurance King alleges that Carter manipulated his interactions with Health Insurance King to try to "manufacture" a TCPA case. If so, this will cast serious doubt on both the merits of Carter's claim, the presence of personal jurisdiction, and whether a class should be certified. For present purposes, however, the Court is limiting its analysis to the briefing and evidence submitted specifically on Health Insurance King's motion to dismiss for lack of personal jurisdiction. Health Insurance King may renew its motion to dismiss for lack of personal jurisdiction if and when it believes the underlying facts have been developed to a sufficient degree to change the Court's analysis in this Order. In the meantime, the Court will let

United States Magistrate Judge William P. Kelly rule in the first instance on Carter's pending motion to compel. (ECF 27.)

### III. CONCLUSION.

Based on the state of the pleadings at the time of briefing on Health Insurance King's Motion to Dismiss—and, especially, the governing legal standards—the Court DENIES Health Insurance King's Motion to Dismiss. (ECF 8.)

**IT IS SO ORDERED.**

Dated: July 21, 2025

_____
STEPHEN H. LOCHER
U.S. DISTRICT JUDGE