## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
## EASTERN DIVISION

| | |
|---|---|
| **MONTWAIN CARTER, individual and on behalf of all other similarly situated**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**HEALTH INSURANCE KING AGENCY, LLC**<br><br>**Defendant.** | **NO. 3:25-cv-00005-SHL-WPK** |

## RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL HEALTH INSURANCE KING AGENCY, LLC TO PROVIDE DISCOVERY RESPONSES, FOR SANCTIONS, AND FOR EXTENSION

### I.    INTRODUCTION

As should be clear to Plaintiff and the Court by now, Health Insurance King did not make any calls to Plaintiff, as alleged in Plaintiff's Complaint. Instead, it received multiple calls with Plaintiff on the other end. The Court ordered Health Insurance King to provide answers to interrogatories about its vendors and sub-vendors and related contracts, to which Health Insurance King promptly and fully complied. Health Insurance King complied by providing—among other information—a contract between it and Alvarado Marketing and a related contract between Alvarado Marketing and a company called Health Choice Now. Health Insurance King also provided information about how it receives incoming call transfers, such as the one involving Plaintiff.

Health Insurance King is a small business with limited resources. Indeed, it does not make outgoing calls but relies upon third party contracts to provide incoming call leads because of its limited resources. Those same limited resources mean that providing an enormous amount of additional discovery, such as every communication it may have with Alvarado Marketing, regardless of subject-matter, places a difficult burden on Health Insurance King. Such a burden is only justified if Plaintiff can explain why such extensive discovery is relevant and proportional to the needs of the case, which Plaintiff's counsel repeatedly refused to do during the discovery conference.

Plaintiff has not and cannot provide a basis as to why this discovery is relevant or proportional. And, Health Insurance King is not in a position to provide any additional information about any of the calls with Plaintiff because neither Health Insurance King nor Alvarado Marketing have that information. Nor is it in a position to provide any information about any agency relationship between Health Insurance King and whoever called Plaintiff because there are intervening independent businesses between Health Insurance King and the caller.

The motion should be denied.

## II.    FACTS

This action began when Plaintiff filed a complaint alleging direct liability against HIK for having its employee, Timothy Reese, call him three times in violation of the TCPA. (Compl. ¶¶ 27-31.) Plaintiff alleged he only answered one of the calls on December 2, 2024. (*Id.*) But HIK's

**Inbound** Call Log

| Dialer ID | Call Date | Inbound Group | List | User | Queue Time | Phone | Number Dialed | Number Description | Length |
|-----------|-----------|---------------|------|------|------------|-------|---------------|--------------------|--------|
| 816625 | 2024-12-03 13:52:22 | SRI_IA: SR Inbound IA | 24753: AMGACA | 5397: Timothy Reese | 00:00:00 | 5632712492 | 18777382570 | 24753 AMG ACA | 00:00:07 |
| 816625 | 2024-12-03 13:49:50 | SRI_IA: SR Inbound IA | 24753: AMGACA | 5397: Timothy Reese | 00:00:00 | 5632712492 | 18777382570 | 24753 AMG ACA | 00:00:55 |
| 816625 | 2024-12-02 11:39:21 | SRI_IA: SR Inbound IA | 24753: AMGACA | 5397: Timothy Reese | 00:00:00 | 5632712492 | 18777382570 | 24753 AMG ACA | 00:01:2X |
| 816625 | 2024-12-02 11:37:35 | SRI_IA: SR Inbound IA | 24753: AMGACA | 6778: Lynette Gibson | 00:00:00 | 5632712492 | 18777382570 | 24753 AMG ACA | 00:00:51 |

call records and call recordings demonstrate that it received four *incoming* calls involving Plaintiff:

There were two calls on December 2nd and two calls on December 3rd.[1]

Because of its limited size, HIK relies upon third party contractors to provide leads for potential customers. It has a marketing agreement with Alvarado, who promised to deliver health insurance leads or calls. (Advertiser Agreement, Ex. A to Pl.'s Mot.) But Alvarado does not provide the leads or calls itself. Instead, it contracted with an independent company named Health Choice Now to provide call transfers to HIK. (Insertion Order, Ex. 1.) An image from this contract was included in Exhibit B to Plaintiff's motion, the email exchanges in which Plaintiff mistakenly confused Alvarado for Health Choice Now. Notably, Plaintiff did not include this contract or any reference to it in its motion.

A review of the contract between Alvardo and Health Choice Now shows it is subject to Health Choice Now's standard terms and conditions. In other words, neither Alvarado nor HIK could dictate any terms to Health Choice Now, much less direct Health Choice Now as their agent. Indeed, Health Choice Now is a large company that offers health insurance leads/referrals to many companies.[2]

As explained in HIK's amended interrogatory answers, under the contract with Alvarado, Health Choice Now—or whoever placed the call for Health Choice Now—transfers the call directly to a phone number for HIK without any involvement from Alvardo. As a result, neither HIK

---

[1] Plaintiff has not acknowledged the existing of the additional calls and recordings or the various discrepancies from his recount of a single call and the recorded audio.

[2] See its website at https://healthchoicenow.com/

nor Alvarado have any information about any call placed to Plaintiff, including who placed it.[3]

In addition, in response to a request made months ago by HIK to Alvarado that Alvarado passed along to Health Choice Now, HIK received an excel spreadsheet with information related to an online application authorizing a call for insurance made on December 1, 2024, one day before the single call Plaintiff describes with HIK. Plaintiff included that document as Ex. C but redacted the email, IP address, and Jornaya ID that were included. A Jornaya ID is apparently a unique identifying number designed to provide a comprehensive record of a lead's journey, ensuring transparency and compliance.[4] As a result, there is a reasonable chance that documentary evidence indicating Plaintiff authorized the call he received—from someone other than HIK—one day before he received it.

Upon receiving the amended discovery responses and documents ordered by the Court, Plaintiff's counsel demanded all communications between HIK and Alvarado because Alvarado supposedly "placed the calls," including the call to Plaintiff. (Meet and Confer Correspondence, Ex. B to Pl's Mot.) The undersigned counsel informed Plaintiff's counsel that its request was based on the erroneous assumption that Alvarado had made the calls. (*Id.*) Plaintiff's counsel apparently failed to carefully read or understand the contracts or documents provided to him.

---

[3] As part of complying with the Court's order, the undersigned counsel had a conversation with someone working for Alvarado that confirmed Alvarado's lack of involvement or information about the calls transferred to HIK.

[4] Plaintiff's counsel claims to be intimately familiar with Jornaya IDs, but the undersigned counsel is not. The undersigned counsel has asked HIK to try to obtain a copy of the report associated with Plaintiff's Jornaya ID but HIK has no contractual or financial leverage to require that document or speed its delivery.

Plaintiff's description of the discovery conference call with Mr. Reisch is essentially wholly inaccurate. It is replete with fictional quotes. And it omits important details:

- Plaintiff's counsel's concession that he misunderstood the information provided and roles of Alvarado and Health Choice Now.

- Defendant's counsel's repeated inquiries of what relevant information Plaintiff was hoping to find in all the communications between HIK and Alvarado in an attempt to further confer on the issue, clarify any confusion, or help redirect counsel to whom the proper party would be to find such information. And yet, Plaintiff's counsel's failed to offer any explanation.

- Defendant's counsel's explanation that HIK's resources were limited and the collection and review of documents could not be justified without some idea of the potential relevance.

- Defendant's counsel suggestion that discovery to third party Health Choice Now was an appropriate target for discovery relating to the call to Plaintiff, especially given recent information indicating that Plaintiff filled out an online application authorizing a call to him.

In the call, Plaintiff's counsel falsely accused Defendant of violating the court order and after Plaintiff's counsel separately claimed that the production of spreadsheet with the Jornaya ID—which made its way to HIK months after being requested and which HIK was not sure it would ever receive—showed that HIK had "possession, custody, and control" of all the call information.

## III.    ARGUMENTS AND AUTHORITIES

Rule 26(b)(1) limits discoverable information to which is relevant to a claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The proportionality factors involve considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id.*

Neither aspect is met here. Plaintiff is clearly targeting communications between Alvarado and HIK. But Plaintiff's arguments for why such communications are relevant cannot withstand scrutiny. Those documents could not make any fact at issue in this case more or less likely because Alvarado and HIK do *not* have information about the call placed to Plaintiff that is at the center of his claims. Separately, even if Plaintiff could establish relevance, the discovery it seeks is not proportional to the needs of this case.

### A. The documents sought by Plaintiff are not relevant to any issue in the case.

Plaintiff seeks to compel HIK to produce:

> All communications with any third party that provided you the Plaintiff's telephone number.

Specifically, Plaintiff is seeking to compel all communications between HIK and Alvarado, regardless of subject-matter. Incorrectly assuming that Plaintiff is correct that Alvarado provided HIK with the telephone number, the communications he seeks would have no relevance—

making a material fact more or less likely—to any claim or defense.

Plaintiff's only claim is centered around the call he received. But none of the communications Plaintiff seeks could have any relevance to that issue because HIK has already confirmed it has no communications with the person that dialed a call to Plaintiff (or anyone else):

> **REQUEST NO. 9.** All communications with any third party that dialed the calls to the Plaintiff.
>
> **RESPONSE: Health Insurance King does not have any responsive documents to this request.**

It would be Health Choice Now, not HIK or Alvarado, that would be the source of information related to the call. As explained in HIK's amended interrogatory answers, Alvarado plays no part in the calls being transferred to HIK:

> Health Insurance King contracts exclusively with Alvarado Marketing Group, Inc. for the provision of potential customer leads. Alvarado Marketing Group has never had any campaign to make outbound calls to Plaintiff on behalf of Health Insurance King. Health Insurance King does not believe Alvarado Marketing Group has a dialing system to make calls. Alvarado Marketing Group directs its own vendor/contractor to forward calls to Health Insurance King.

(HIK's Amended Discovery Resps., Ex. 2 at 3.)

Plaintiff gives alleged examples of items covered by this request that are supposedly relevant:

> These communications may reveal, *inter alia*, whether Alvarado disclosed it was hiring Health Choice, when Alvarado provided Defendant a copy of its contract with Health Choice (which Defendant has produced), when and how Alvarado produced the data in Exhibit C to Defendant, any directions from Defendant to Alvarado to be passed along to Health Choice (or vice-versa), among other similar communications and correspondences outlining and clarifying the nature and scope of each party's

involvement in the calling/marketing pipeline and conduct. (Motion at 11.) But how would such hypothetical information make a material fact more or less likely? The disclosure to HIK of a copy of Alvardo's contract with Health Choice Now does not indicate who made the call to Plaintiff, whether that person had permission, or indicate any agency relationship at all—much less between HIK and the actual caller. When and how Alvardo provided Exhibit C is equally irrelevant to those issues.

And what directions supposedly provided to Alvarado would speak to those issues? Passing along "directions" to a third party through an intermediary is hardly sufficient to create an agency relationship. Nor does the existence of such hypothesized instructions even make sense. Health Choice Now's **standard terms and conditions** indicate that it will be responsible for ensuring that call transfers originating from outbound calls involved prior written consent of the consumer under the TCPA. (Insertion Order, Ex. 1 at 3.) HIK has contracted (and paid) for a separate third party to generate leads of individuals interested in health insurance to be transferred to it. It would not make economic or practical sense for HIK to even attempt to pass along a directive to change Health Choice Now's standard practice. Nor would it make economic or practical sense for Health Choice Now to comply with any such directive.

Whatever Plaintiff imagines the relationship between HIK and Alvarado to be, it has no bearing on any of the issues in this case. This is because a separate third party independent contractor was contractually responsible for obtaining written consent under the TPCA, making outbound calls, and transferring calls of consumers interested

in health insurance directly to HIK without further involvement from Alvarado.

**B. Any communications between HIK and Alvarado are not covered by the request Plaintiff seeks to compel.**

Plaintiff contends that Alvarado provided HIK with Plaintiff's telephone number because it had a contract with HIK requiring it to provide telephone numbers. But that is not accurate. Alvarado's obligation was limited to providing leads, calls, or redirects as specified in an Insertion Order. (Advertising Agreement, Ex. A to Pl.'s Motion at ¶ 3.) The Insertion Order at issue specifies that only call transfers will be provided. (Insertion Order, Ex. 1 at 1 & 3.) The calls were transferred by someone affiliated with Health Choice Now without further involvement. (HIK's Amended Discovery Resps., Ex. 2 at 3.)

As a result, Alvarado never had Plaintiff's telephone number and could not have provided it to HIK. In fact, when Plaintiff's counsel (erroneously) believed that the Insertion Order was between HIK and Alvarado and that Alvarado was the one providing call transfers—instead of Health Choice Now, he argued that the request covered Alvarado because Alvarado "would call people and then transfer those calls to Defendant." (Conference Correspondence, Ex. B to Pl.'s Motion at 4.) It was only after Plaintiff's counsel recognized his erroneous conflation of Alvarado with Health Choice Now that he reinterpreted RFP No. 9 to involve Alvarado as contractual intermediary, rather than the third party providing the call transfers under the Insertion Order.

### C. Requiring HIK to produce "all communications between HIK and Alvardo" would not be proportional to the needs of the case.

Even assuming Plaintiff had made any case for relevance of some communications between HIK and Alvarado, requiring HIK to produce all communications with Alvarado—regardless of subject matter, timing, etc.— it is not proportional under the factors specified in Rule 26(b)(1). Nothing related to the HIK and Alvarado relationship is central to the material fact issues in this case. It should also be noted that Plaintiff's request for documents is not limited to the types of information he argues are relevant. Plaintiff demanded *every* communication.

The amount currently in controversy relating to Plaintiff is minimal, far less than the thousands of dollars in expense involved in collecting and reviewing collections of email files.[5] Plaintiff will undoubtedly argue that his claims encompass those of an entire class. But Plaintiff has not attempted to certify a class and the evidence adduced so far raises serious questions of whether any such class can be certified. All the documentary evidence—call logs, call recordings, contracts, etc.—indicates that HIK did not place any call to Plaintiff (and does not make calls to prospective customers at all). The call to Plaintiff was initiated by someone else HIK does not know and has no right to control (and thus no legal responsibility for under the TCPA). And there is at least some documentary evidence that Plaintiff

---

[5] The undersigned counsel has experience with dozens of email and text message collections, reviews, and productions designed to ensure that all available communications are available for review of responsiveness and relevance. The vendor costs of email ingestion and production alone— without considering the expense of guiding the client in document collection and review costs— would be a minimum of approximately $2,000.

***consented*** to the only call alleged that was eventually transferred to HIK.

The parties' relative access to relevant information also does not support production. The key information relevant to this suit appears to be focused in Health Choice Now. Plaintiff has already served a subpoena for those records on Health Choice Now. Getting information from that entity about the call, Plaintiff's authorization for call, and the directions under which the caller was operating makes the most sense and Plaintiff will likely have that information before HIK ever does. Further, Plaintiff's willingness to subpoena Health Choice Now, and several other third parties, demonstrates that he (or perhaps his counsel) has better litigation resources than HIK.

Moreover, it is information from Health Choice Now, rather than anything else possessed by HIK, that will be important in resolving the fact issues in this case surrounding the call to Plaintiff.

In addition, the burden to HIK substantially outweighs any usefulness to Plaintiff. The supposedly relevant information Plaintiff speculates would be contained in the proposed production is unlikely to make a difference in this case. Likely the sole outcome from compelling the production will require HIK to incur substantial additional expense, likely ranging from $2,000-$7,000. Perhaps that expense does not seem like much to Plaintiff. But HIK has already suffered difficulties in handling the already incurred expense and time associated with this litigation. Compelling it to incur additional expense for such dubious benefit to Plaintiff is not justified.

### D. Sanctions are not warranted.

Even if the Court decides to compel the production sought by Plaintiff, there is no basis for sanctions. HIK (and its counsel) had legitimate concerns about the relevance of information sought by Plaintiff, the additional expense and difficulty such production would have on HIK, and the fact that a subpoena to Health Choice Now seemed like a far more useful discovery effort. HIK's counsel discussed each of these issues on the discovery conference call with Plaintiff's counsel who refused to provide any response as to why it was relevant. He simply argued that the Court had already determined that such communications were relevant (with which HIK's counsel disagreed). Even the arguments Plaintiff now makes for relevance were not provided on the call. As for Plaintiff's colorful description of HIK's side of the call, it simply is not true. The undersigned counsel, Nicholas Reisch, has been in practice for twenty-one years, and during his time as an attorney has never been subject to discipline or sanctions, and has consistently remained in good standing. Indeed, he has always taken the rules of ethics seriously and upholds the highest standards of professionalism. Mr. Reisch understands the importance of civility that comes with this profession, as he not only practices in Texas but routinely practices around the country. Mr. Reisch denies the allegations made against him and cannot do more than deny a version of events that did not happen. The undersigned takes exception to the personal allegations made against him.

## IV.    CONCLUSION AND PRAYER

For the above reasons, HIK requests that the Court deny Plaintiff's motion and grant HIK any further relief to which it may be entitled.

Respectfully submitted,

**SPENCER FANE LLP**

By:    /s/ Nicholas J. Reisch
Brian W. Zimmerman
(Admitted *Pro Hac Vice*)
State Bar No. 00788746
bzimmerman@spencerfane.co
Nicholas J. Reisch
(Admitted *Pro Hac Vice*)
State Bar No. 24046699
nreisch@spencerfane.com
3040 Post Oak Blvd., Suite 1400
Houston, Texas 77056
Telephone:    (713) 552-1234
Facsimile:    (713) 963-0859

Tara E. Holterhaus, AT0013780
13815 FNB Parkway, Suite 200
Omaha, NE 68154
Phone: (402) 501-6770
tholterhaus@spencerfane.com
**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

The undersigned, an attorney, states that he caused the foregoing to be served upon all counsel of record on October 28, 2025:

Eric Steven Mail
Eric David Puryear
PURYEAR LAW PC
3719 Bridge Avenue, Suite 6
Davenport, IA 52807
eric@puryearlaw.com
mail@puryearlaw.com

Anthony Paronich
PARONICH LAW PC
350 Lincoln Street, Suite 2400
Hingham, MA 02043
anthony@paronichlaw.com

Andrew Roman Perrong, Esq.
PERRONG LAW LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
a@perronglaw.com

*/s/ Nicholas J. Reisch*
Nicholas J. Reisch