# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| MONTWAIN CARTER, individually and on behalf of all others similarly situated, | : <br> : CIVIL ACTION FILE NO. <br> : 3:25-cv-00005-SHL-WPK |
| Plaintiff, | : <br> : |
| v. | : **COMPLAINT – CLASS ACTION** <br> : |
| HEALTH INSURANCE KING AGENCY, LLC, ALVARADO MARKETING GROUP, INC, AND HEALTH CHOICE NOW, LLC | : <br> : **JURY TRIAL DEMANDED** <br> : |
| Defendants. | : <br> : |

Plaintiff Montwain Carter (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

## NATURE OF ACTION

1. "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019).

2.  "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id.* at 649-50.

3.  Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making telemarketing calls to numbers on the National Do Not Call Registry, including his own.

4.  Because these calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls.

5. A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## PARTIES

6. Plaintiff Montwain Carter is an individual who has a 563 area code number, which is associated with this District.

7. Defendant Health Insurance King Agency, LLC is a Texas based health insurance agency that uses illegal telemarketing calls sent by vendors it hired to solicit business from and into this District, including by directing its conduct to 563- area code numbers and using 563- area code numbers to place the calls.

8. Defendant Alvarado Marketing Group, Inc. is a Texas based lead generator who contracted with Defendant Health Insurance King for the provision of calling individuals and then transferring those calls to Health Insurance King.

9. Defendant Health Choice Now, LLC is a Florida based lead generator with whom Defendant Alvarado subcontracted to generate calls as part of the Advertiser Agreement between Alvarado and HIK.

## JURISDICTION AND VENUE

10. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*. This Court has supplemental jurisdiction over the state law claims since they relate to the same telemarketing campaign.

11. This Court has specific personal jurisdiction over Defendants because they directed their conduct into this state by calling individuals with 563- area codes, as well as using those same 563- area code numbers on the calls.

12. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts and omissions giving rise to the case, namely, the illegal telemarketing conduct, occurred here because the calls were directed into this State and utilized this State's area codes to place the calls.

## TCPA BACKGROUND

<u>The Enactment of the TCPA and its Regulations</u>

13. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

14. Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

15. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

16. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

17. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## FACTUAL ALLEGATIONS

18. Defendants are all "persons" as the term is defined by 47 U.S.C. § 153(39).

19. Plaintiff Carter is also a "person" as the term is defined by 47 U.S.C. § 153(39).

20. At no point has the Plaintiff consented to receive telemarketing calls from the Defendants regarding the sale of goods or services, including health insurance services, prior to receiving the automated calls at issue.

Calls to Plaintiff

21. Mr. Carter's residential telephone number is (563) XXX-XXXX.

22. That telephone number is a residential telephone line used by Mr. Carter for personal calls and for personal, family, and household use.

23. The telephone number is a residential number because it is assigned to a telephone exchange service for consumers, not a telephone exchange service for businesses.

24. Mr. Carter does not use the number for business reasons and the number is not registered in the name of or associated with a business.

25. The number is in Mr. Carter's name and he pays the bill.

26. Plaintiff Carter never consented to receive calls from Defendants.

27. Plaintiff Carter never did business with the Defendants.

28. Mr. Carter registered his residential telephone number on the National Do Not Call Registry on October 23, 2024, and it has remained on the Registry since that time.

29. Despite this, the Plaintiff received at least 3 calls from either Defendants Health Choice Now or Alvarado, which were sent on November 25, 26, and December 2, 2024 and solicited him to sign up for health insurance.

30. The first call came from 563-888-1294, which was rejected. No message was left.

31. The second call came from 563-888-1567, which was rejected. No message was left

32. The Plaintiff answered the third call on December 2, 2024 from 563-888-8621 which was placed by either Health Choice Now or Alvarado and which discovery has revealed was eventually transferred to Defendant Health Insurance King. During the call, he spoke to an individual who tried to solicit him for health insurance. This individual collected his age, information about his insurance, and ZIP code.

33. The individual with whom Plaintiff spoke was an individual named "Timothy Reese" at the Defendant company, Health Insurance King Agency, in Mansfield Texas.

34. Public records reveal that Mr. Reese is an employee of the defendant and a licensed insurance producer for Defendant Health Insurance King.

35. Defendant Health Insurance King is a health insurance agency that sells health insurance.

36. Although the other calls were either missed, rejected, or unanswered, the other calls were sent to also solicit the Plaintiff to purchase an individual or family health insurance plan and were later confirmed to be telephone numbers which were transferred to Defendant Health Insurance King. The calls were thus all made to sell the Plaintiff Defendant Health Insurance King's health insurance plans. They were therefore made for telemarketing purposes.

37. The Defendants called the Plaintiff at least three times attempting to solicit the Plaintiff for health insurance that Plaintiff had no interest in.

38. The calls were autodialed because there was a brief pause and delay on the line before the Plaintiff answered the call and there was no human being on the line when he answered the calls.

39. Moreover, the unanswered calls did not leave messages or provide any other indication that a human being would send them.

40. Defendants therefore used automated marketing software to place the calls.

41. Plaintiff never consented to receive calls from Defendants.

42. Plaintiff never did business with the Defendants.

43. Discovery has revealed that Alvarado billed HIK for tens of thousands of dollars' worth of "transferred" "billable" leads per week, at a rate of approximately $50 per transfer.

44. Discovery has also revealed that HIK was paying Alvarado between approximately $20,000 and $70,000 per week for "billable leads" at approximately $50 per lead. At that rate, HIK was receiving between approximately 400 and 1,400 call transfers per week and as many as 1,400 calls in a single week during peak periods from Alvarado.

45. Based on the foregoing, it is evident that Defendants mass-dialed calls indiscriminately and incessantly, including to numbers on the Do Not Call Registry.

46. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

47. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

48. The FCC has instructed that sellers such as HIK may not avoid liability by hiding behind third party agents and outsourcing telemarketing to third parties, such Alvadaro and Health Choice Now:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement

in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

49. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

50. HIK is liable for the conduct of Alvarado and Health Choice Now and the telemarketing calls placed by Health Choice Now and/or Alvarado, transferred through Alvarado, and routed to HIK to generate insurance customers for HIK, including the Plaintiff.

51. Moreover, with full knowledge that Alvadaro and Health Choice Now were violating the TCPA do not call registry provisions, HIK did nothing.

52. HIK thus had full knowledge of Alvadaro and Health Choice Now's illegal conduct and did not terminate or discipline them, thus implicitly ratifying their actions and endorsing their illegal behavior.

53. The aforementioned facts demonstrate that HIK failed to supervise Alvarado or enforce their compliance with applicable laws and regulations, and that Alvarado likewise failed to supervise Health Choice Now.

54. The aforementioned facts also demonstrate that HIK failed to supervise Alvadaro and Health Choice Now or enforce their compliance with applicable laws and regulations.

55. HIK was interested in hiring a lead generator that could make phone calls to potential customers, vet potential clients, and only transfer them the interested ones. HIK contracted with Alvarado to provide them.

56. To do so, Alvarado procured call transfers from Health Choice Now, LLC, its own vendor/contractor, and provided transferred those calls to HIK.

57. HIK has admitted in discovery that "Alvarado Marketing Group directs its own vendor/contractor to forward calls to Health Insurance King," and that "Alvarado Marketing Group obtains potential customer leads from Health Choice Now, LLC and provides those leads as calls forwarded to Health Insurance King." HIK has further admitted that "[t]o the best of Health Insurance King's knowledge, the leads provided by Alvarado Marketing Group to Health Insurance King originate solely from Health Choice Now, LLC."

58. Indeed, HIK's relationship with Alvarado contains numerous hallmarks of agency, which were memorialized in the Advertiser Agreement governing Alvarado's services.

59. For example, the Advertiser Agreement describes HIK as the advertiser and end-purchaser of "Leads, Calls, and Redirects," and Alvarado as the entity in the business of "acquiring, generating, and licensing certain consumer information" and "transferring inbound calls from consumers expressing an interest in insurance products."

60. The Advertiser Agreement required Alvarado to "deliver Leads, Calls, and Redirects as set forth in the IO using lawful methods and in compliance with applicable laws, including TCPA, TSR, CAN-SPAM, and state insurance marketing laws." This compliance obligation placed on Alvarado as the lead-generation party confirms the agency relationship and HIK's supervisory role over the marketing conduct carried out on its behalf.

61. The Advertiser Agreement required HIK to use leads "solely to provide insurance quotations" and to "comply with all applicable laws." HIK thus took on responsibility for the lawful use of every lead generated and transferred on its behalf.

62. Alvarado also agreed to indemnify "HIK for violations of TCPA or misrepresentations in lead generation." The very existence of this TCPA-specific indemnification provision demonstrates that both parties understood that TCPA violations were a foreseeable consequence of the lead generation activity Alvarado was performing on HIK's behalf, and that HIK was aware of the legal risks inherent in the campaign it was sponsoring.

63. The Agreement also provided that each engagement was subject to an Insertion Order specifying "campaign details including pricing, vertical, filters, state/geography, volume caps, exclusivity, and return policies." This demonstrates that HIK directly controlled the parameters of the calling campaign, including which consumers to target, what geographic markets to pursue, and how many calls to accept. Moreover, the agreement provided that HIK could set "return policies" and reject leads that did not meet its criteria. This right to accept or reject the product of the calling campaign, and to set the criteria for what constitutes an acceptable lead, gave HIK direct control over and direction of the calling conduct performed by Alvarado and Health Choice Now on its behalf.

64. Furthermore, HIK could have terminated Alvarado at any time upon thirty (30) days' written notice, or immediately upon material breach.

65. It did not.

66. By virtue of specifying the leads and call criteria it would accept, including by directing the geographic and demographic parameters of the campaign through Insertion Orders, HIK directed Alvarado, and through Alvarado, Health Choice Now, as to the content, method,

and criteria of the communications those entities used in their calling in order to meet the specified criteria.

67. A reasonable seller like HIK whose agents are making thousands of call transfers per week on its behalf would investigate the methods by which those calls are generated, particularly given the explicit TCPA compliance obligations in its own contract with Alvarado.

68. It did not.

69. As such, HIK knowingly ratified Alvarado's and Health Choice Now's conduct.

70. HIK also ratified Alvarado's and Health Choice Now's conduct because, with knowledge that it was hiring Alvarado to procure call transfers, and that Alvarado in turn was directing Health Choice Now to generate those calls, it accepted the transferred calls and attempted to sell health insurance products to the consumers on those calls, including the Plaintiff.

71. HIK accepted the call transfers from Alvarado/Health Choice Now and utilized them for its own commercial benefit by promoting its insurance services to Plaintiff.

72. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

73. Here, Health Choice Now is directly liable under the TCPA because it is the actual initiator of the subject calls. Alvarado is directly liable as the intermediary that directed Health Choice Now to generate and transfer those calls and that received and re-transferred those

calls to HIK, and HIK is vicariously liable for for hiring Alvarado to procure call transfers on its behalf, for the campaign it sponsored and directed through Insertion Orders and lead criteria, and for accepting and monetizing those call transfers with full awareness of how they were generated.

74. Plaintiff's privacy has been violated by the above-described telemarketing calls.

75. Plaintiff never provided his consent or requested these calls.

76. The aforementioned calls to the Plaintiff were unwanted.

77. The calls were non-consensual encounters.

78. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

79. Plaintiff brings this action on behalf of himself and the following class (the "Class") pursuant to Federal Rule of Civil Procedure 23.

80. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **National Do Not Call Registry Class**: All persons in the United States whose (1) residential telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendants, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

81. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the class as he has no interests that conflict with any of the class members.

82. Excluded from the Class are counsel, the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

83. Plaintiff and all members of the Class have been harmed by the acts of the Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

84. This Class Action Complaint seeks money damages.

85. The Class as defined above are identifiable through the Defendants' dialer records, other phone records, and phone number databases.

86. Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes Class members for each Class number, at minimum, in the hundreds based on the fact that automated methods were used to send the calls.

87. The joinder of all Class members is impracticable due to the size of the Class and relatively modest value of each individual claim.

88. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

89. There are numerous questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

    (a) whether Defendants made calls to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls;

    (b) whether Defendants' conduct constitutes a violation of the TCPA;

    (c) whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct;

  (d) the corresponding degrees of liability as between and among the Defendants; and

  (e) whether Defendant Insurance King is vicariously liable for calls placed by Defendants Alvarado and Health Choice Now.

90. Further, Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests which are antagonistic to any member of the Class.

91. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so.

92. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.

93. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## FIRST CAUSE OF ACTION
**Violation of the Telephone Consumer Protection Act**
**47  U.S.C. 227(c) on behalf of the National Do Not Call Registry Class**

94. Plaintiff incorporates the allegations in paragraphs 1-93 as if fully set forth herein.

95. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the telephone numbers of Plaintiff and members of the Class on the National Do Not Call Registry.

96. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and

members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their numbers on the National Do Not Call Registry in violation of the statute, pursuant to 47 U.S.C. § 227(c)(5).

97. If the Defendants' conduct is found to be knowing or willful, the Plaintiff and members of the Class are entitled to an award of up to treble damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation;

B. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing such Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

C. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Dated: February 21, 2026

PLAINTIFF, individually and on behalf of all others similarly situated,
*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com