IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| MONTWAIN CARTER, individually and on behalf of all others similarly situated, <br><br> *Plaintiff*, <br><br> v. <br><br> HEALTH INSURANCE KING AGENCY, LLC, ALVARADO MARKETING GROUP, INC., AND HEALTH CHOICE NOW, LLC, <br><br> *Defendants*. | Case No. 3:25-cv-00005-SHL-WPK <br><br><br> **DEFENDANT HEALTH CHOICE NOW, LLCS' BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION** |

**TABLE OF CONTENTS**

I.   INTRODUCTION ....................................................................................................... 1

II.  FACTUAL BACKGROUND ..................................................................................... 2

        A.   Plaintiff Agreed to What If's Terms and Conditions ............................................. 2

        B.   The Terms and Conditions Contain an Arbitration Agreement ............................... 4

        C.   Plaintiff's Consent to the Privacy Policy and How It Works Document ................ 5

        D.   A Neutral Third Party's Report Confirms Plaintiff's Agreement ........................... 5

        E.   Plaintiff's Information Matches 38 Interactions with What If Websites ................ 7

III. ARGUMENT ............................................................................................................... 8

        A.   The Federal Arbitration Act Applies to the Arbitration Provision ......................... 8

        B.   Plaintiff's Assent to the Terms Creates a Valid Arbitration Agreement ................. 9

        C.   Any Disputes Over Scope of the Arbitration Agreement are Within the
            Arbitrator's Authority to Decide .........................................................................11

        D.   Plaintiff's Dispute Falls Within the Broad Scope of the Arbitration
            Agreement .......................................................................................................... 13

        E.   The Court Should Issue a Stay as to What If Pending Resolution of the
            Arbitration ......................................................................................................... 15

IV.  CONCLUSION ......................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*3M Co. v. Amtex Sec., Inc.*,
   542 F.3d 1193 (8th Cir. 2008) ....................................................................................14

*Advance Elevator Co., Inc. v. Four State Supply Co.*,
   572 N.W.2d 186 (Iowa Ct. App. 1997)........................................................................11

*AT&T Mobility, LLC v. Concepcion*,
   563 U.S. 333 (2011).......................................................................................................8

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986).................................................................................................12, 13

*Bank of Am. v. UMB Fin. Servs., Inc.*,
   618 F.3d 906 (8th Cir. 2010) .........................................................................................9

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985).......................................................................................................8

*Dickson v. Gospel for ASIA, Inc.*,
   902 F.3d 831 (8th Cir. 2018) .......................................................................................14

*Duncan v. Int'l Markets Live, Inc.*,
   No. 4:20-cv-00017-RGE-HCA, 2022 WL 18584630 (S.D. Iowa Dec. 9, 2022)...............10, 14

*Epic Sys. Corp. v. Lewis*,
   584 U.S. 497 (2018).......................................................................................................8

*Fields v. NCR Corp.*,
   683 F. Supp. 2d 980 (S.D. Iowa) ...........................................................................10, 11

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995)......................................................................................................10

*Foster v. Walmart*,
   15 F.4th 860 (8th Cir. 2021) ........................................................................................10

*Gannon v. Circuit City Stores, Inc.*,
   262 F.3d 677 (8th Cir. 2001) .........................................................................................9

*Larry's United Super, Inc. v. Werries*,
   253 F.3d 1083 (8th Cir. 2001) .......................................................................................9

*Moore v. Evangelical Lutheran Good Samaritan Soc'y*,
   No. 4:14-cv-00381, 2014 WL 11394912 (S.D. Iowa Dec. 12, 2014)................................9, 11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
 460 U.S. 1 (1983)........................................................................................................9, 13

*Parm v. Bluestem Brands, Inc.*,
 898 F.3d 869 (8th Cir. 2018) ...............................................................................................14

*Principal Life Ins. Co. v. Caremark PCS Health, LLC*,
 56 F. Supp. 3d 1013 (S.D. Iowa 2014) ................................................................................12

*Pro Tech Indus., Inc. v. URS Corp.*,
 377 F.3d 868 (8th Cir. 2004) ............................................................................................8, 9

*Smith v. Spizzirri*,
 601 U.S. 472 (2024).............................................................................................................15

*Union Ins. Co. v. Hull & Co.*,
 831 F. Supp. 2d 1060 (S.D. Iowa 2011) ...............................................................................9

*Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
 489 U.S. 468 (1989).............................................................................................................14

*Wells Enters., Inc. v. Olympic Ice Cream*,
 903 F. Supp. 2d 740 (N.D. Iowa 2012)................................................................................12

*Witt v. Nation-Wide Horse Transportation, Inc.*,
 197 F. Supp. 3d 1146 (S.D. Iowa 2016) ..............................................................................10

**Statutes, Rules & Regulations**

9 U.S.C. § 1, et seq..........................................................................................................................5

9 U.S.C. § 2......................................................................................................................................8

9 U.S.C. § 3....................................................................................................................................15

47 U.S.C. § 227(c) ...........................................................................................................................1

AAA Consumer Arbitration Rule 7, available at
 https://www.adr.org/media/yawntdvs/2025_consumer_arbitration_rules.pdf
 (last viewed April 27, 2026) ..........................................................................................11, 12

JAMS Comprehensive Arbitration Rule 11(b), available at
 https://www.jamsadr.com/rules-comprehensive-arbitration (last viewed April
 27, 2026) ..............................................................................................................................12

Defendant Health Choice Now, LLC, an affiliated entity to What If Holdings LLC ("What If"), by and through its undersigned counsel, hereby moves this Court to compel Plaintiff Montwain Carter's claims to arbitration and stay this case.

## I.     INTRODUCTION

When Plaintiff registered for accounts on various What If owned-and-operated websites, he agreed to arbitrate any disputes he has with What If, including any telephone calls that he received stemming from his interactions with those websites. Plaintiff now asserts a single cause of action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227(c) ("TCPA") for calls Plaintiff alleges to have received from or on behalf of What If to his telephone number without the requisite level of consent. Because Plaintiff's claims fall squarely within the ambit of the parties' contractual agreement to arbitrate, this case does not belong in a judicial forum.

There should be no valid dispute as to contract formation. What If's records confirm that Plaintiff visited What If owned-and-operated websites on thirty-eight (38) occasions, each time affirmatively consenting to What If's Terms and Conditions (the "Terms"), which include an agreement to arbitrate disputes with What If. The Terms include a broad delegation clause that assigns questions of scope or applicability to the Arbitrator; thus, with contract formation established, that should end this Court's inquiry by compelling arbitration and staying the case. If the Court nevertheless elects to consider the question of scope, Plaintiff's claims—alleged violations of the TCPA based on calls Plaintiff received from or on behalf of What If—fall within the scope of the arbitration agreement.

The parties' contract should be honored, and Plaintiff should be compelled to arbitrate his claims against What If.

1

## II.      FACTUAL BACKGROUND

### A.      Plaintiff Agreed to What If's Terms and Conditions

Since his initial registration with a What If Holdings, LLC d/b/a C4R Media Corp.[1] owned-and-operated website in February 2022, Plaintiff has visited at least twelve (12) separate What If websites. Declaration of Ben Zitter ("Zitter Decl.") ¶ 8, Exhibit A. Specifically, Plaintiff visited the following websites on the corresponding dates:

- win.click2win4life.com – February 9, 2022, three times on March 17, 2022, May 28, 2022, June 14, 2022, July 19, 2022, March 18, 2023, March 20, 2023, and May 27, 2023.

- claim.theclassactionguide.com – March 28, 2022 and January 25, 2023.

- help.unemploymentbenefitsguide.com – May 26, 2022, May 28, 2022, and October 7, 2023.

- win.bestdayeversweeps.com – May 26, 2022, and March 19, 2023.

- claim.foundmoneyguide.com – May 28, 2022, twice on June 5, 2022, August 12, 2022, March 27, 2023, and April 29, 2023.

- go.thepersonalfinancialguide.com – twice on June 5, 2022, June 10, 2022, and October 2, 2024

- go.thefreedailyraffle.com – June 7, 2022

- deals.thefreesamplehelper.com – October 30, 2022, and March 19, 2023

- go.topcreditcardfinder.com – November 5, 2022, October 5, 2024, October 8, 2024, and May 29, 2025

- win.omgsweeps.ingo – December 6, 2022, and March 12, 2023

- find.usaassistanceguide.com – April 29, 2023

- go.creditguideusa.com – September 19, 2023.

(hereafter, the "Websites"). Zitter Decl. ¶ 8; Ex. A. Most recently, Plaintiff visited the What If website go.topcardfinder.com ("Top Credit Card Finder" or the "Site") on May 29, 2025. *Id*. ¶ 9,

---

[1] C4R Media Corp. is a marketing company that provides advertising and customer acquisition including through, among other methods, the operation of user-facing websites. Zitter Decl. ¶ 2. C4R and Health Choice Now are affiliated companies under the common ownership of What If Holdings, LLC. Zitter Decl. ¶ 4.

2

Ex. A. The Site is an aggregator of information from third parties about credit card offers and while free, it requires users to agree to certain legal terms, including an arbitration agreement. *Id.* ¶ 10.

Upon landing on the Site, Plaintiff provided his e-mail address and agreed to the Terms by clicking an action button, which was preceded by the following language: "By clicking the button below, I confirm I am over 18 and I agree to: (i) the Terms and Conditions (which requires arbitration) and Privacy Policy (which permits data sharing) . . ." *Id.* ¶ 11. The following screenshot from the Site is identical is all material respects as it would have appeared to Plaintiff on May 29, 2025:

*Id.* ¶13.

The terms "Privacy Policy," and "Terms and Conditions," are in blue font, which contrasts with the black text of the surrounding language and signifies to the reader that the Privacy Policy and Terms and Conditions documents are hyperlinked. *Id.* Clicking on the hyperlink for the "Terms and Conditions" on the Site opens a new browser window that contains the complete Terms being

3

agreed to. *Id.* ¶ 14, Ex. B. Only by pressing the "Submit" action button and expressly confirming his agreement to the Terms, could Plaintiff advance to the next pages of the Site. *Id.* ¶¶ 11-12.

**B.     The Terms and Conditions Contain an Arbitration Agreement**

The Terms that were accessible to Plaintiff during his May 29, 2025 visit to the Site, establish the following scope for their applicability:

> You agree to the terms and conditions outlined in the Agreement with respect to your use of this Website Offerings. The Agreement constitutes the entire and only agreement between you and Company with respect to your use of the website Offerings, and supersedes all prior or contemporaneous agreements, representations, warranties and/or understandings with respect to the Website Offerings . . .

*Id.* at ¶ 14; Ex. B at 2. The phrase "Website Offerings," is defined consistently across the Websites, to include Links, Content, and "any calls, text messages, emails or other communications that you may receive in conjunction with your use of the Website[s]." Ex. B at 2.

The arbitration provision appears in the Terms under the heading "Dispute Resolution Provisions" ("Arbitration Agreement") and provides that:

> This agreement applies to any "Dispute" between (a) you, and (b) us and/or our advertisers marketing partners, or clients, which you agree are third-party beneficiaries of these Dispute Resolution Provisions (Company, its parent, subsidiaries, affiliates, and their advertisers, marketing partners, and clients, and each of their respective officers, directors, employees, agents, shareholders, licensors, suppliers and/or attorneys) are all included within the term "Company" for purposes of these Dispute Resolution Provisions) *related to the Website or Offerings including, without limitation, or any calls, texts or emails you may receive in conjunction with your interactions with the Website or any Offerings or other interactions with us.*

Ex. B at 8. (emphasis added). The Arbitration Agreement clarifies that "[f]or the avoidance of doubt and without limiting the foregoing, you agree to arbitrate any dispute related to any emails, text messages or calls you may receive from us or from any third party in conjunction with your interactions with our Website or with us, regardless of whether such dispute is with us or with the third party." Ex. B at 8.

The Arbitration Agreement further states that:

> You and Company agree that Disputes will be settled by BINDING INDIVIDUAL ARBITRATION conducted by, at the discretion of the party initiating arbitration, AAA or JAMS, according to the U.S. Federal Arbitration Act ("FAA") and federal arbitration law and according to the arbitration provider's applicable rules, as modified by these Terms. These Terms affect interstate commerce, and the enforceability of this Section 4 will be substantively and procedurally governed by the FAA, 9 U.S.C. § 1, et seq., to the extent permitted by law.

Ex. B at 9.

### C.       Plaintiff's Consent to the Privacy Policy and How It Works Document

During each of Plaintiff's thirty-seven (37) other visits to the Websites, he also agreed to What If's Privacy Policy and How It Works document. Zitter Decl. ¶¶ 24, 25; *see also* Exhibit D & E. The Privacy Policy contained the following language, which Plaintiff agreed to by affirmatively clicking on the action buttons on the Websites:

> By submitting your PII by and through the offerings, you agree that such act constitutes an inquiry and/or application for purposes of the Amended Telemarketing Sales Rule (16 CFR §310 et seq.), as amended from time to time (the "Rule") and applicable state do-not-call regulations. As such, notwithstanding that your telephone number may be listed on the Federal Trade Commission's Do-Not-Call List, and/or on applicable state do-not-call lists, we retain the right to contact you via telemarketing in accordance with the Rule and applicable state do-not-call regulations.

*Id.* at ¶ 24, Ex. D. Similarly, the How It Works document that Plaintiff repeatedly agreed to included language confirming that opting in—through clicking on the action buttons—would result in the receipt of marketing communications from "us and many of our marketing partners," including through telephone calls and text message. *Id.* at ¶ 25, Ex. E.

### D.       A Neutral Third Party's Report Confirms Plaintiff's Agreement

After Plaintiff clicked the respective action button on some of the Websites to register his account and confirm agreement to the Terms containing the Arbitration Agreement, he was directed to a page where he provided personal information, including his name, zip code, address,

date of birth, and phone number. *Id.* at ¶¶ 26–29. Plaintiff was then directed to the form submission

page of the Websites titled "Review Your Information," where he was asked to confirm the

accuracy of his name, zip code, phone number, address, and date of birth. *Id.* at ¶¶ 27, 28. These

fields were pre-populated with information that Plaintiff had submitted on the prior pages of that

Website. *Id*. An example of the webform including Plaintiff's consent to proceed is:



*Id.* ¶ 27. In order to proceed, Plaintiff checked a box affirming that: "I confirm that all of my information is accurate and consent to be called as provided above." *Id.* Above that box, there was the following disclosure:

> By checking the box below, I provide my signature expressly consenting to receive sales calls and/or text messages regarding insurance services and/or other offers via an automatic telephone dialing system and/or artificial and/or prerecorded calls from C4R Media Corp or its marketing partners at the cellular/landline telephone number I have provided above, regardless of this number being listed on any federal or state Do Not Call registry. Message and data rates may apply. Get approximately 30 messages per month. Reply "STOP" to any message to cancel. I understand that consent is not required to register or use the site. In order to register without providing consent, leave this box unchecked.

*Id.* Plaintiff then clicked on the "Continue" button. *Id.* at ¶¶ 27, 28.

Plaintiff's interactions with all 38 of the Websites' form submissions pages were documented by TrustedForm software provided by an independent third-party, ActiveProspect, which acted as a witness to Plaintiff's consent. *Id.* at ¶¶ 30, 31. ActiveProspect provides a Certification of Authenticity that data relating to Plaintiff's interactions on the form submission page—including keystrokes, mouse clicks, and data entry—were authentic and the result of an actual user interaction. *See, e.g., id.* ¶¶ 32, 33, Exs. F, G. ActiveProspect also provided a "Session Reply" of what Plaintiff saw on his screen during his visits and interactions on the form submission pages. *Id.* ¶¶ 34, 35.

### E. Plaintiff's Information Matches 38 Interactions with What If Websites

What If's database reveals that Plaintiff had thirty-eight (38) total interactions with the Websites owned and operated by What If. Zitter Decl. at ¶¶ 9, 16. Each time, Plaintiff agreed to be bound by the Terms and the Arbitration Agreement therein. *Id.* at ¶ 11, 16. These interactions where Plaintiff's information was submitted show consistency in terms of the mobile device, operating system, and browser used to interact with the Websites. *Id.* ¶ 8, Ex. A. They also show submission from a repetitive series of IP addresses. *Id.* Further, the substantive information submitted was in

Mr. Carter's name and each included a consistent submission of name, address, email address, telephone number, and date of birth. *Id.*

What If has no record of receiving written notice from Plaintiff opting out of either the arbitration provisions or the class-action waivers in the Terms. Zitter Decl. ¶ 36.

## III.   ARGUMENT

Plaintiff's claims against What If are subject to mandatory arbitration. Plaintiff repeatedly agreed to arbitrate disputes with What If, including disputes related to calls and/or text messages from or on behalf of What If. The broad delegation clause requires that the Court stop its analysis once contract formation is established. Should the Court nevertheless evaluate the scope of the arbitration agreement, it should find that Plaintiff's claims are covered by the Terms and, thus, compel arbitration. Therefore, What If respectfully requests that the Court compel Plaintiff's claims against What If to arbitration and stay this action as to What If.

### A.       <u>The Federal Arbitration Act Applies to the Arbitration Provision</u>

The Terms' Arbitration Agreement is governed by the FAA, which mandates that binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues" that are covered by a valid arbitration agreement. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original); *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004) (same).

The FAA reflects a "liberal federal policy favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018) (citation omitted); *AT&T Mobility, LLC v. Concepcion*, 563

U.S. 333, 339 (2011). "The FAA establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Union Ins. Co. v. Hull & Co.*, 831 F. Supp. 2d 1060, 1066 (S.D. Iowa 2011) (quoting *Bank of Am. v. UMB Fin. Servs., Inc.*, 618 F.3d 906, 911 (8th Cir. 2010) (cleaned up)); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) (establishing that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

Here, the Terms expressly incorporate the FAA as governing the dispute between Plaintiff and What If. The Arbitration Agreement provides that disputes between Plaintiff and What If will be settled through "binding individual arbitration conducted by, at the discretion of the party initiating arbitration, AAA or JAMS, according to the U.S. Federal Arbitration Act ('FAA') and federal arbitration law." Zitter Decl. ¶ 14; Ex. B at 9. Thus, the "court's role under the FAA is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute." *Pro Tech Indus., Inc.*, 377 F.3d at 871; *Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 680 (8th Cir. 2001).

**B.        <u>Plaintiff's Assent to the Terms Creates a Valid Arbitration Agreement</u>**

Whether the parties have entered into a valid agreement to arbitrate is a requisite element to a court's determination to compel arbitration. *Larry's United Super, Inc. v. Werries*, 253 F.3d 1083, 1085 (8th Cir. 2001); *Moore v. Evangelical Lutheran Good Samaritan Soc'y*, No. 4:14-cv-00381, 2014 WL 11394912, at *2 (S.D. Iowa Dec. 12, 2014). Plaintiff's dozens of registrations on the Websites each included affirmative consent to the Terms, including the Arbitration Agreement. Zitter Decl. ¶¶ 8, 11–16. Before Plaintiff could register for accounts on the Websites, he checked a box and affirmatively agreed to the Terms. *Id*. ¶ 14, 16. Plaintiff would not have been able to advance to subsequent pages on the Websites without agreeing to the Terms. *Id.* at ¶¶ 11, 12, 16.

9

That record establishes formation of a valid contract, including an agreement to arbitrate all disputes arising under the Terms.

"Arbitration is simply a matter of contract law." *Fields v. NCR Corp.*, 683 F. Supp. 2d 980, 984 (S.D. Iowa) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). Because the FAA does not specify the rules governing contract formation, state law controls. *Fields*, 683 F. Supp. 2d at 984. Courts routinely recognize that users of a computer program or application may manifest their consent to terms and conditions by tapping on buttons adjacent to a clear disclosure that clicking on that button constitutes a valid agreement to terms accessible through a hyperlink. *See Duncan v. Int'l Markets Live, Inc.*, No. 4:20-cv-00017-RGE-HCA, 2022 WL 18584630, at *6 (S.D. Iowa Dec. 9, 2022); *see also Foster v. Walmart*, 15 F.4th 860, 863 (8th Cir. 2021) (explaining "courts rarely find problems with clickwrap agreements" because "the user sees the list of the terms and conditions before accepting them"). In *Duncan*, the plaintiff signed up to become an independent business owner through the defendant's website, but before she could proceed—like here—she was required to check a box affirmatively agreeing to the defendant's terms and conditions, including an arbitration provision. *Id.* at *6. The court held that "[plaintiff's] electronic click is sufficient to establish acceptance of the arbitration provision contained in the [terms]." *Id.* The same result is warranted here.

Plaintiff was presented with the hyperlinked Terms and repeatedly manifested assent by clicking on the action button below the disclosure language. Zitter Decl. ¶¶ 13, 14, 16. This District "sees no inherent problem in the fact that the contract in this case was entered into through the internet with the use of so-called 'clickwrap' or 'scroll-wrap' terms and conditions." *Witt v. Nation-Wide Horse Transportation, Inc.*, 197 F. Supp. 3d 1146, 1153 (S.D. Iowa 2016) (enforcing forum-

selection clause agreed to through an affirmative checkbox adjacent to the hyperlinked terms and the action button). Each of Plaintiff's affirmative clicks bound him to the Terms.

That Plaintiff may have declined the opportunity to click the hyperlink and review the conspicuously referenced Terms during the registration process is of no moment. "[A] party cannot avoid the terms of a contract simply because a harsh result may occur from the failure to read the contract." *Fields*, 683 F. Supp. 2d at 987 (quoting *Advance Elevator Co., Inc. v. Four State Supply Co.*, 572 N.W.2d 186, 188 (Iowa Ct. App. 1997). In other words, Plaintiff's failure to read an accessible agreement does not constitute grounds to avoid obligations under the agreement. *Moore* is instructive because the plaintiff left a box checked confirming that he was presented with the arbitration agreement and agreed to it. 2014 WL 11394912, at *1. The Court confirmed that the plaintiff could not "avoid the terms of a signed agreement simply because he made the choice not to read it," even without an affirmative checkbox (like here). *Id.* at *3. "The failure to read the . . . Arbitration Agreement does not mean he did not assent to the terms via his signature." *Id.* Plaintiff was clearly and conspicuously presented with the Terms and affirmatively accepted those Terms, regardless of whether Plaintiff clicked on the hyperlink and reviewed the Terms.

Plaintiff's affirmative acceptance of the Terms, via checkbox and submission of his email address thus formed a valid, binding agreement between the parties.

**C.   Any Disputes Over Scope of the Arbitration Agreement are Within the Arbitrator's Authority to Decide**

The Terms incorporate by reference "the arbitration provider's applicable rules," which grants authority to the Arbitrator, of either JAMS or AAA as the provision leaves the arbitral venue to the consumer's discretion, to decide issues of arbitrability. Zitter Decl. ¶ 14, Ex. B. Pursuant to Rule 7 of the AAA Consumer Arbitration Rules:

11

> The arbitrator shall have the power to rule on their own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

American Arbitration Association, Consumer Arbitration Rules, Rule 7.[2] Similarly, Rule 11 of the

JAMS Comprehensive Arbitration Rules provides:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, who are the proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator.

JAMS, Comprehensive Arbitration Rules and Procedures, Rule 11(b).[3] Thus, the Terms delegate

authority to the arbitrator and that is not an issue for the Court to decide. "Issues of arbitrability

are to be decided by the arbitrator in the first instance if the agreement to arbitrate 'clearly and

unmistakably' so provides." *Wells Enters., Inc. v. Olympic Ice Cream*, 903 F. Supp. 2d 740, 752

(N.D. Iowa 2012) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649

(1986)).

This District routinely confirms that the incorporation of the arbitral forum's rules into an

arbitration agreement "demonstrates the intent of the parties . . . to defer that question [of

application to this dispute] to an arbitrator." *Principal Life Ins. Co. v. Caremark PCS Health*, *LLC*,

56 F. Supp. 3d 1013, 1019 (S.D. Iowa 2014) (granting motion to compel arbitration); *Wells Enters.,*

*Inc.*, 903 F. Supp. 2d at 752 (determining that incorporation of the AAA Rules into the arbitration

provision rendered the question of arbitrability best left to the arbitrator).

---

[2] Available at https://www.adr.org/media/yawntdvs/2025_consumer_arbitration_rules.pdf (last viewed April 27, 2026).

[3] Available at https://www.jamsadr.com/rules-comprehensive-arbitration (last viewed April 27, 2026).

Accordingly, if there is any dispute over whether Plaintiff's claims fall within the scope of his validly formed agreement to arbitrate disputes, the Court should compel that question to the arbitrator for determination.

### D.        Plaintiff's Dispute Falls Within the Broad Scope of the Arbitration Agreement

Even if Plaintiff and What If had not elected to grant the arbitrator the power to decide threshold questions of arbitrability (they did) and this Court opts to evaluate that question, it should find that Plaintiff's claims fall within the scope of the agreement to arbitrate. "[I]t has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs.*, 475 U.S. at 650; *see also Moses H. Cone*, 460 U.S. at 24–25. That presumption is particularly applicable where the arbitration clause is broadly worded, as the Terms are here. *AT&T Techs.*, 475 U.S. at 650.

The Terms are worded such that the plain reading encompasses the calls that Plaintiff alleges stand as the factual predicate for his claims against What If. The Terms, in pertinent part, state that:

> This agreement applies to any "Dispute" between (a) you, and (b) us . . . related to the Website or Offerings including, without limitation, or any calls, texts or emails you may receive in conjunction with your interactions with the Website or any Offerings or other interactions with us.

Zitter Decl. ¶ 14, Ex. B at 8. The Terms further state that: "For the avoidance of doubt and without limiting the foregoing, you agree to arbitrate any dispute related to any emails, text messages or calls you may receive from us or from any third party in conjunction with your interactions with our Website or with us, regardless of whether such dispute is with us or with the third party." *Id.*

"Arbitration clauses covering claims 'arising out of' or 'relating to' an agreement are broad." *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 874 (8th Cir. 2018). The Eighth Circuit has directed that "[i]n applying a broad clause, we ask whether the underlying factual allegations simply touch matters covered by the arbitration provision." *Id.* at 875. To determine whether factual allegations "touch matters" covered by the arbitration clause, the court must "look past the labels the parties attach to their claims to the underlying factual allegations and determine whether they fall within the scope of the arbitration clause." *Id.* For example, in *Dickson v. Gospel for ASIA, Inc.*, the Eighth Circuit reversed a finding that the dispute fell outside the scope of the arbitration agreement because the language of that agreement was broad—covering "any and all disputes of any kind arising out of [the parties'] relationship"—and thus the court could not say "with positive assurance" that the factual allegations at issue did not arise from the relationship. 902 F.3d 831, 834–36 (8th Cir. 2018); *see also Duncan*, 2022 WL 18584630, at *9 (compelling arbitration where the court could not say with "positive assurance" that the arbitration agreement did not encompass the parties' dispute). In other words, "[w]hen the parties have agreed on an arbitration clause that appears to cover their dispute, it should be upheld." *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008); *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989).

Here, the arbitration provision is broadly worded and concerns all disputes "related to" calls received from What If. Plaintiff affirmatively asked to receive calls from What If, including about various products and services. Zitter Decl. ¶¶ 25, 28. He specifically requested to receive calls, including sales calls about insurance services, from What If and its marketing partners. *Id.* ¶¶ 26, 27. Plaintiff's claims in this lawsuit arise from and relate to calls that Plaintiff alleges to have received from What If and its marketing partners. Compl. ¶¶ 73, 94-97. Thus, this claim fits

14

squarely within the scope of the parties' Arbitration Agreement. Further, the language of the Arbitration Agreement is broad in that it applies to "any Dispute" between the parties "related to the Website or Offerings" which includes calls from or on behalf of What If. Zitter Decl. Ex. B at 8. Plaintiff's TCPA claim thus "touches matters" described in the Terms. *Id.* ¶ 14. Accordingly, even if the Court were to decide for itself the question of arbitrability, it should confirm that the scope of the parties' agreement covers Plaintiff's claims and this dispute must be compelled to arbitration.

**E.**     **The Court Should Issue a Stay as to What If Pending Resolution of the Arbitration**

Section 3 of FAA directs courts to stay litigation that is subject to an arbitration clause between the parties. Section 3 states, in relevant part:

> If any suit or proceeding be brought . . . upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

*See* 9 U.S.C. § 3. "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). Thus, What If respectfully requests that this Court stay all proceedings as to What If during the pendency of the arbitration.

**IV.     CONCLUSION**

What If respectfully requests that the Court compel Plaintiff to arbitrate his claims against What If and stay this action as to What If pending the outcome of that proceeding.

Respectfully submitted,

Dated:   April 28, 2026          FAEGRE DRINKER BIDDLE & REATH LLP

*/s/ Jesse Linebaugh*

15

Jesse Linebaugh
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309
Telephone:  515-248-9000
Jesse.linebaugh@faegredrinker.com

Paul A. Rosenthal (*pro hac vice* forthcoming)
Krista N. Hartrum (*pro hac vice* forthcoming)
600 Campus Drive
Florham Park, NJ 07932
paul.rosenthal@faegredrinker.com
krista.hartrum@faegredrinker.com

*Attorneys for Defendant Health Choice Now, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, thereby serving a copy on all counsel of record.

*/s/ Jesse Linebaugh*

16