IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| MONTWAIN CARTER, individually and on behalf of all others similarly situated, *Plaintiff,* v. HEALTH INSURANCE KING AGENCY, LLC, ALVARADO MARKETING GROUP, INC., AND HEALTH CHOICE NOW, LLC, *Defendants.* | Case No. 3:25-cv-00005-SHL-WPK **DECLARATION OF BEN ZITTER IN SUPPORT OF DEFENDANT HEALTH CHOICE NOW, LLC'S MOTION TO COMPEL ARBITRATION** |

## DECLARATION OF BEN ZITTER

1. Pursuant to 28 U.S.C. § 1746, I, Ben Zitter, declare as follows:

2. I am the Chief Compliance Officer of What If Holdings, LLC d/b/a C4R Media Corp. I have personal knowledge of the facts stated herein, and if called upon to testify to those facts I could and would competently do so.

3. C4R Media Corp. is a marketing company that provides advertising and customer acquisition including through, among other methods, the operation of user-facing websites.

4. C4R Media Corp. (hereafter, "What If") is an affiliate entity of Health Choice Now, LLC, both of which are under common control of What If Media Group, LLC.

5. As Chief Compliance Officer of What If, I am familiar with the user-facing websites operated by What If and its database of information relating to users of such websites (the "Database").

6. What If keeps and maintains the records in its Database in the ordinary course of

Docusign Envelope ID: CE0007D8-D44E-89D6-8219-EEFR4BDC4C80

its business operations and as part of its business records, which are automatically generated by computer systems at the time of the event or occurrence to which the records relate.

**Montwain Carter's Submissions**

7.      What If was able to research the information stored in the Database with respect to Plaintiff Montwain Carter and visits to websites owned and operated by What If.

8.      Based on information in the Database, Montwain Carter visited What If websites on at least thirty-eight occasions between February 9, 2022, and May 29, 2025, and agreed to the websites' terms and conditions, including binding arbitration. A true and correct copy of a report from the Database of each of Plaintiff's thirty-eight interactions whereby he agreed to the terms and conditions on What If websites is attached as Exhibit A. The interactions reflected in this report, and other interactions by Plaintiff with What If websites, are described in more detail below.

**Agreement to Arbitrate (May 29, 2025)**

9.      On May 29, 2025, a user confirmed the name Montwain Carter and the email address montwaincarter4@gmail.com, and agreed to the terms and conditions during a visit to a What If owned and operated website bearing the name "Top Credit Card Finder," more specifically go.topcardfinder.com (the "Top Credit Card Finder Site").

10.     The Site is an aggregator of information from third parties about credit offers. It is free to users because it has third-party advertisers and third-party marketing partners. Users who want to use the Top Credit Card Finder Site are required to agree to certain legal terms, which include an agreement to arbitrate any disputes, as explained in more detail below.

11.     To enter the Top Credit Card Finder Site, a user must first confirm their email address. Then, a user must click a button labeled "Submit", which has language immediately above it saying, "By clicking the button below, I confirm I am over 18 and I agree to: (i) the Terms and

Conditions (which requires arbitration) and Privacy Policy (which permits data sharing) . . . "

12.     This language is presented above the "Submit" button such that the language is unavoidable to any user who chooses to navigate through the Site.

13.     The terms "Privacy Policy" and "Terms and Conditions" are in blue font and underlined, which, in contrast with the black text of the surrounding language, signifies to the reader that the Privacy Policy, Terms and Conditions documents are hyperlinked. A screenshot of the online agreement described above on the Top Credit Card Finder Site, which is identical in all material respects as it would have appeared on May 29, 2025, when Plaintiff visited the Top Credit Card Finder Site is produced below:



14.     Clicking on the "Terms and Conditions" opens up the Top Credit Card Finder Site "Terms and Conditions" document. A true and correct copy of the "Terms and Conditions" document in effect and on the Site on May 29, 2025, is attached hereto as Exhibit B.

15.     Based on the information in the Database, the user accessed the Top Credit Card Finder Site on May 29, 2025, at 4:27 PM EDT, from an IPv6 address of

2600:1008:b1a6:83d7:0:51:828b:7a01, confirmed the email address "montwaincarter4@gmail.com" and clicked on the "Submit" button.

**Thirty-Seven Agreements to Arbitrate Prior to May 29, 2025**

16. On thirty-seven other occasions prior to the May 29, 2025, visit discussed above, Plaintiff visited What If websites and agreed to the sites' terms and conditions.

17. For example, on January 25, 2023, Plaintiff visited a What If owned and operated website bearing the name "Class Action Guide," more specifically claim.theclassactionguide.com (the "Class Action Site").

18. To enter the Class Action Site, a user must first confirm their email address. Then, a user must click a button labeled "Search For Your Cash", which has language immediately above it saying, "By clicking the button below, I confirm I am over 18 and I agree to: (i) the Privacy Policy and Terms and Conditions . . . . and (iii) How It Works." This language is presented above the "Search For Your Cash" button such that the language is unavoidable to any user who chooses to navigate through the Site.

19. The terms "Privacy Policy," "Terms and Conditions" and "How It Works" are in blue font, which, in contrast with the black text of the surrounding language, signifies to the reader that the Privacy Policy, Terms and Conditions, and How It Works documents are hyperlinked. A screenshot of the online agreement described above on the Site, which is identical in all material respects as it would have appeared on January 25, 2023, when Plaintiff visited the Class Action Site is produced below:

Docusign Envelope ID: CE0007D8-D44E-89B6-8219-EEFR4BDC4C80

## Confirm Your Email

Email

By clicking the button below, I confirm I am over 18 and I agree to: (i) the Privacy Policy and Terms and Conditions (ii) receive daily email from us, our affiliated companies, and unaffiliated third parties, which I can unsubscribe from at any time; and (iii) How It Works.

**SEARCH FOR YOUR CASH**

20.    Clicking on the "Terms and Conditions," "Privacy Policy" or "How It Works" link opens up those documents. True and correct copies of the "Terms and Conditions," "Privacy Policy," and "How It Works" documents in effect and on the Class Action Site on January 25, 2023, are attached, respectively, as Exhibits C, D, and E, respectively.

21.    A user may only advance to the next page of the Class Action Site by clicking the "Search For Your Cash" button and confirming their agreement to the Terms and Conditions, which contain an arbitration provision titled "Dispute Resolution Provision."

22.    Based on the information in the Database, the user accessed the Class Action Site on January 25, 2023, at 10:29 PM EST, from an IPv4 address of 152.117.105.21, confirmed the email address "montwaincarter4@gmail.com" and clicked on the button "Search For Your Cash" thereby confirming his agreement to the Terms and Conditions of the Site.

23.    Between February 9, 2022, and October 8, 2024, Plaintiff on thirty-seven occasions (including the January 25, 2023 visit described above in paragraphs 9-15) visited What If websites, confirmed or entered his email address montwaincarter4@gmail.com, and agreed to the Terms and

Conditions, Privacy Policy, and How it Works documents set forth in Exhibits C, D, and E, in a manner substantially similar as described in paragraphs 17-22.

**Specific Language about Calls in Privacy Policy and How it Works Documents**

24.     The Privacy Policy that Plaintiff agreed to on thirty-seven occasions included the following language:

> By submitting your PII by and through the offerings, you agree that such act constitutes an inquiry and/or application for purposes of the Amended Telemarketing Sales Rule (16 CFR §310 et seq.), as amended from time to time (the "Rule") and applicable state do-not-call regulations. As such, notwithstanding that your telephone number may be listed on the Federal Trade Commission's Do-Not-Call List, and/or on applicable state do-not-call lists, we retain the right to contact you via telemarketing in accordance with the Rule and applicable state do-not-call regulations.

25.     The "How it Works" document that Plaintiff agreed to on thirty-seven occasions included the following language:

- **You will be asked to opt in.** When you sign up on this site, you will be asked to opt in to see ads, receive ads by email and text and phone.

- **You will get marketing messages from us and our partners.** If you opt in, you will receive marketing messages from us and many of our marketing partners, by email, phone, and/or text. If you don't want to receive marketing messages or have your data shared, do not sign up or opt in.

**Other Agreements to be Contacted**

26.     During some of the visits by Plaintiff to the What If websites set forth above in Exhibit A, Plaintiff also separately agreed to receive calls, including sales calls about insurance services, from What If and its marketing partners.

27.     For example, on April 29, 2023 at 1:53 PM EDT, during a visit to the What If website usaassistanceguide.com, Plaintiff confirmed his agreement to "receive sales calls and/or

6

text messages regarding insurance services" by checking the box next to "I confirm that all of my information is accurate and consent to be called as provided above" and submitting the following webform with his personal information:



28.     As another example, on January 25, 2023, at 10:30 PM EST, during Plaintiff's visit to the Class Action Site as described above in paragraphs 17-22, Plaintiff confirmed his agreement

to "receive sales calls and/or text messages" by checking the box next to "I confirm that all of my information is accurate and consent to be called as provided above" and submitting the following webform with his personal information:



29.     On at least two other occasions, including on December 6, 2022, and October 30, 2022, Plaintiff submitted similar agreements to receive calls via webforms on What If websites.

**TrustedForm Certificates of Authenticity**

30.     To provide independent validation of users' interactions with the webforms shown above in paragraphs 27-28, What If uses TrustedForm software service from ActiveProspect, an independent third-party software provider. This is done by What If adding JavaScript coding to the webpage where a form is displayed. Data relating to a user's interactions on that page are tracked and maintained by ActiveProspect to certify via a "Certificate of Authenticity" that the information submitted was authentic and the result of an actual user interaction.

31.     What If has possession of a Certificate of Authenticity from TrustedForm by ActiveProspect for each of the users' interactions set forth above in Exhibit A.

32.      A true and correct copy of the Certificate of Authenticity related to Plaintiff's agreement to be contacted on April 29, 2023 at 1:53 PM EDT, during a visit to the What If website usaassistanceguide.com, as set forth above in paragraphs 27-28, is attached as Exhibit F.

33.     A true and correct copy of the Certificate of Authenticity related to Plaintiff's agreement to be contacted on January 25, 2023, at 10:30 PM EST, during Plaintiff's visit to the Class Action Site, as set forth above in paragraphs 17-22, is attached as Exhibit G.

34.     The Certificates of Authenticity identify the date, time, and length of the user's interaction with the webform, the URL that was visited, the IP address and approximate geographic location of the visitor, and the browser and operating system that they used as captured by ActiveProspect.

35.     The on-line version of the Certificate of Authenticity also contains a tab and a link for a "Session Replay" of what the user saw on their screen during their visit and their interaction. This online "Session Replay" demonstrates visually that the user clicked the boxes and submitted the forms as set forth above in Paragraphs 27, 28.

36.     What If has no record of receiving written notice from Plaintiff Montwain Carter opting out of either the arbitration provisions or the class-action waivers in the Terms and Conditions.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 28, 2026.

Signed by:

Ben Zitter