**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| MONTWAIN CARTER, individually and on behalf of all others similarly situated, | : : : | CIVIL ACTION FILE NO. 3:25-cv-00005-SHL-WPK |
| Plaintiff, | : : | |
| v. | : : | |
| HEALTH INSURANCE KING AGENCY, LLC, ALVARADO MARKETING GROUP, INC, AND HEALTH CHOICE NOW, LLC | : : : : | **JURY TRIAL DEMANDED** |
| Defendants. | : : : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS HEALTH INSURANCE KING AGENCY, LLC
AND ALVARADO MARKETING GROUP, INC.'S
MOTION TO DISMISS**

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND............................................................................................ 2

III. LEGAL STANDARD...................................................................................................... 4

IV. ARGUMENT ................................................................................................................. 5

    **A. The Court Has Already Considered, and Rejected, the Core of Defendants' Motion. The Developed Facts Do Not Change the Analysis.** ................................................................. 5

    **B. A Single Solicitation Call Directed Into Iowa Establishes Specific Jurisdiction. The Only Questions Are of Liability and Agency, Which Are Fact Bound.** .............................. 7

        1. The "Independent Contractor" Label and Defendants' Self-Serving Declarations Cannot Carry a Threshold Motion.......................................................................................... 8

        2. HIK and Alvarado are Vicariously Liable Under Actual Authority.................................. 9

        3. HIK and Alvarado are Vicariously Liable Under Apparent Authority........................... 11

        4. HIK and Alvarado are Vicariously Liable Under Ratification. ..................................... 12

        5. Health Choice Was HIK's SubAgent Through Alvarado............................................. 14

    **C. Independently, HIK Is Subject to Jurisdiction and is Liable as the Seller "On Whose Behalf" the Calls Were Placed Under 47 U.S.C. § 227(c)(5).** ............................................. 15

    **D. At a Minimum, the Jurisdictional Question Is Enmeshed With the Merits, and the Court Should Deny the Motion.** ............................................................................................ 18

V. CONCLUSION............................................................................................................ 19

## I. INTRODUCTION

Almost a year ago, Defendant Health Insurance King Agency, LLC ("HIK") moved to dismiss for lack of personal jurisdiction on the theory that it did not place the calls to Plaintiff, that it had no record of them, and that whoever did call was a third party acting outside HIK's control, citing the very same line of cases on which it again relies. The Court rejected that argument. It held that Plaintiff had made a *prima facie* showing of specific jurisdiction, that the contested factual questions about who called and with what authority must be resolved in Plaintiff's favor, and that the cases Defendant cites here were "inapposite." (Order, ECF 29 at 4-6.) The Court denied the motion and declined even to narrow discovery, observing that the jurisdictional question was "sufficiently intertwined with the issues of class certification and the merits to make it unnecessary to segment discovery." (*Id.* at 7.)

Discovery has now confirmed precisely what the Court anticipated. The calls to Plaintiff were placed by Defendant Health Choice Now, LLC ("Health Choice Now"), funneled through Defendant Alvarado Marketing Group, Inc. ("Alvarado"), and transferred to HIK to be answered by HIK's own Iowa-licensed insurance producer, who solicited Plaintiff for HIK's insurance and directed him to HIK's website. HIK paid Alvarado tens of thousands of dollars per week for a stream of thousands of these Iowa-bound solicitations. HIK's own contract, which it produced in discovery, and as outlined in the Amended Complaint, states that HIK is the advertiser who purchased "Leads, Calls, and Redirects," and states that Alvarado is in the business of "acquiring, generating, and licensing certain consumer information" and "transferring inbound calls from consumers expressing an interest in insurance products." The agreement required Alvarado to deliver those calls in compliance with the TCPA, let *HIK* (not anyone else) dictate the campaign's "state/geography," "filters," "volume," and other call criteria through Insertion

Orders, let HIK reject nonconforming leads, and let HIK terminate the arrangement. The Amended Complaint pleads all of this in detail, quoting the contracts HIK itself produced.

Far from supplying "developed" facts that "change the Court's analysis" (the only basis on which the Court authorized renewal, ECF 29 at 7), discovery has *strengthened* the case for jurisdiction. Plaintiff has done exactly what the Court directed him to do. He has identified who placed the calls, traced the chain by which they reached HIK, and pleaded the agency relationships and the associated contractual language, produced by Defendant HIK itself, that make HIK and Alvarado answerable for those calls. Defendants' renewed motion rehashes arguments this Court already rejected and asks the Court to resolve hotly disputed factual questions of agency and control against Plaintiff on the pleadings. That is not the law of this Circuit, it is not what the governing Rule 12(b)(2) standard permits, and it is not what this Court's prior Order contemplated.

The renewed motion should be denied.

## II.  FACTUAL BACKGROUND

Plaintiff Montwain Carter is an Iowa resident whose residential cellular number carries a "563" area code serving Iowa, and which has been registered on the National Do-Not-Call Registry since October 2024. (Am. Compl., ECF 45 ¶ 6, 21-28.) Between November 25 and December 2, 2024, Plaintiff received at least three telemarketing calls, each from a 563 area code number, soliciting him to purchase health insurance. (*Id.* ¶ 29-32.) He answered the third call, spoke with an individual who identified himself as "Timothy Reese" of Health Insurance King Agency, was solicited for HIK health insurance, and was directed to HIK's website. (*Id.* ¶¶ 32-34.) Reese is the only insurance producer by that name licensed in Iowa, and HIK admits he is its employee. HIK originally moved to dismiss for lack of personal jurisdiction, relying on a

declaration averring that HIK had no record of the calls, owned no 563 numbers, and does not call non-customers, and that, if Reese placed the call, he exceeded his authority.

On July 21, 2025, the Court denied the motion. (ECF 29.) It recognized that "a single phone call to the forum state is enough to establish personal jurisdiction" in a TCPA case arising out of that call (*Id.* at 4), held that Plaintiff's sworn account that Reese called him "trumps Subia's declaration" at this stage (*Id.* at 5), and found Plaintiff had offered sufficient facts that Reese acted with "actual or apparent authority" from HIK (*Id.*). The denial was without prejudice, and the Court permitted HIK to "renew its motion to dismiss for lack of personal jurisdiction if and when it believes the underlying facts have been developed to a sufficient degree to change the Court's analysis in this Order." (*Id.* at 7.) The Court declined to narrow discovery, reasoning that whether Reese placed the calls and whether he had authority were questions "sufficiently intertwined with the issues of class certification and the merits to make it unnecessary to segment discovery." (*Id.*)

Thereafter, the parties engaged in discovery, which revealed the structure of the campaign. The calls were placed by Health Choice Now, a telephone lead generator, routed through Alvarado, a lead generator that had contracted with HIK to supply "Leads, Calls, and Redirects," and transferred to HIK, which solicited the consumers, including Plaintiff, for HIK's insurance. (ECF 45 ¶ 7-9, 29-32, 55-57, 73.) As the Amended Complaint alleges, HIK admitted in discovery that "Alvarado Marketing Group directs its own vendor/contractor to forward calls to Health Insurance King"; that "Alvarado Marketing Group obtains potential customer leads from Health Choice Now, LLC and provides those leads as calls forwarded to Health Insurance King"; and that, "[t]o the best of Health Insurance King's knowledge, the leads provided by Alvarado Marketing Group to Health Insurance King originate solely from Health Choice Now,

LLC." (ECF 45 ¶ 57.) Discovery further showed that HIK paid Alvarado between roughly

$20,000 and $70,000 per week, about $50 per transfer, for between approximately 400 and 1,400

transferred calls per week. (*Id.* ¶ 43-44.) The Amended Complaint also cites to the governing

contract, the Advertiser Agreement HIK produced, to confirm HIK's role and control.

The Amended Complaint alleges that Health Choice Now is directly liable as the initiator

of the calls, that Alvarado is directly and/or vicariously liable as the intermediary that directed

Health Choice Now to generate and transfer the calls and that itself received and re-transmitted

them to HIK, and that HIK is vicariously liable for hiring Alvarado to procure call transfers on

its behalf, for the campaign it sponsored and directed through Alvarado and for accepting and

monetizing those transfers with knowledge of how they were generated. HIK and Alvarado

answered (ECF 54) and simultaneously filed the present renewed motion to dismiss (ECF 53).

This opposition follows.

### III.  LEGAL STANDARD

To survive a Rule 12(b)(2) motion where, as here, the Court does not hold an evidentiary

hearing, a plaintiff need only make a *prima facie* showing of personal jurisdiction by pleading

sufficient facts to support a reasonable inference that the defendant can be subjected to

jurisdiction within the state. *Hawkeye Gold, LLC v. China Nat'l Materials Indus. Imp. & Exp.

Corp.*, 89 F.4th 1023, 1030 (8th Cir. 2023). Jurisdiction "need not be proved by a preponderance

of the evidence until trial or until the court holds an evidentiary hearing." *Dakota Indus., Inc. v.

Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991). Critically, on a Rule 12(b)(2)

motion decided without a hearing, the Court must look to the facts in the light most favorable to

the nonmoving party and resolve all factual conflicts in favor of that party. *Pederson v. Frost*,

951 F.3d 977, 979 (8th Cir. 2020). Although the Court may consider affidavits and exhibits

4

beyond the pleadings, that latitude runs *in the plaintiff's favor*; it does not license a defendant to win a swearing contest on paper. *See Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 646-47 (8th Cir. 2003). Where a jurisdictional inquiry is enmeshed with the factual merits, such as because the same disputed fact (who is responsible for the calls) decides both, the Eighth Circuit directs courts not to dismiss but to refer the issue to a full trial on the merits. *Magee v. United States*, 9 F.4th 675, 682 (8th Cir. 2021) (addressing subject matter jurisdiction).

## IV.  ARGUMENT

### A.  The Court Has Already Considered, and Rejected, the Core of Defendants' Motion. The Developed Facts Do Not Change the Analysis.

Before reaching the merits, a threshold point bears emphasis. This Court has already heard and rejected most of what Defendants argue. Although the Court permitted renewal, it did so on a specific and limited condition, "if and when [HIK] believes the underlying facts have been developed to a sufficient degree to *change the Court's analysis* in this Order." (ECF 29 at 7 (emphasis added).) Renewal was authorized for changed facts that *undermine* jurisdiction, not as an invitation to relitigate the same arguments the Court already resolved against HIK.

Defendants' motion is, in substance, the original motion with a longer cast of characters. The original motion argued that HIK did not place the calls. The renewed motion argues the identical points and cites the identical cases. And this Court already held the authorities Defendants cite "inapposite" because, unlike the disconnected third parties in *Callier* and *Cunningham*, the calls here are traceable to conduct HIK directed. For that matter, it has also rejected HIK's prior argument that jurisdiction was lacking because the Plaintiff identified only one call that he answered.

Nothing developed in discovery changes that analysis in Defendants' favor. When the Court denied the original motion, the connection between HIK and the calls rested on the inference that Reese, HIK's Iowa-licensed employee, placed or answered a call soliciting HIK's

insurance. (*Id.* at 5–6.) That inference remains intact. Discovery has revealed that HIK hired Alvarado to conduct precisely the same marketing conduct alleged, and that Alvarado went off and hired Health Choice to procure the sending of the subject calls. This documentary chain showing that the calls were generated by Health Choice Now and funneled through Alvarado, shows that HIK paid Alvarado for these calls Health Choice placed at roughly $50 per transfer. Such transfers were governed by a contract in which HIK dictated the campaign's geography and lead criteria, demanded TCPA compliance, took indemnity for TCPA violations, and reserved the right to reject leads and terminate the relationship. (ECF 45 ¶ 43-44, 55-64.) Defendants do not, and cannot, identify a single developed fact that *weakens* the jurisdictional showing. They simply re-urge the position the Court already rejected.

Defendants' lead argument, that Plaintiff has "abandoned" the theory that HIK made the calls and thereby pulled the rug from under the Court's prior Order, mischaracterizes the Amended Complaint. Plaintiff has not abandoned HIK's role. Rather, he has *clarified* the path of the calls and who physically placed them, at HIK's direction, and then transferred them to HIK. Alvarado is not jurisdictionally passive merely because it calls itself a "middleman." The alleged forum contact is the Iowa solicitation call and transfer, as this Court has already recognized. Alvarado's own records show that the subject calls were transferred *through* Alvarado *to* HIK. Alvarado thus purposefully directed calls into Iowa by routing them to HIK, knowing the funnel targeted Iowa residents. Martinez's declaration admits Alvarado's records show Carter's 563 area code calls were transferred to HIK. As such, Alvarado concededly handled the very calls at issue and knew that they were being placed to and from a 563 area code. That is participation in and knowledge of the very forum-specific contact giving rise to the claim.

The Amended Complaint continues to allege that HIK, through Reese, answered the transferred call and solicited Plaintiff for HIK's insurance, and it clarifies that the calls were generated and transferred *on HIK's behalf* as part of a campaign HIK sponsored, directed, paid for, and monetized. That is more than enough to keep HIK and Alvarado in this forum because it is precisely the showing the Court invited Plaintiff to develop. Renewal on these facts is not what the Order contemplated, and the motion should be denied on that ground alone.

**B. A Single Solicitation Call Directed Into Iowa Establishes Specific Jurisdiction. The Only Questions Are of Liability and Agency, Which Are Fact Bound.**

Defendants do not and cannot dispute the governing rule this Court already applied: "a single phone call to the forum state is enough to establish personal jurisdiction when the plaintiff brings a cause of action under the TCPA arising directly out of that call." (ECF 29 at 4 (citing *Keim v. ADF MidAtlantic, LLC*, 199 F. Supp. 3d 1362, 1370 (S.D. Fla. 2016), and *Lowe v. CVS Pharmacy, Inc.*, 233 F. Supp. 3d 636, 645 (N.D. Ill. 2017)).) The calls here were placed to a 563 area code Iowa number, from 563 Iowa numbers, to solicit an Iowa resident for HIK's insurance. They were placed pursuant to a contract under which HIK had the exclusive right to dictate "state/geography" and other campaign details by way of insertion orders. And it accepted the subject transfer and continued to persist in using an Iowa-licensed agent to sell the Iowa plaintiff health insurance intended for Iowa residents. Sufficient minimum contacts are thus satisfied. The only contested question is *attribution*, whether the calls placed by Health Choice Now and transferred through Alvarado to HIK, using the criteria HIK controlled and accepted, may be attributed to HIK (and to Alvarado) for jurisdictional purposes. That is a question of agency, and agency is the paradigmatic fact-bound question that cannot be resolved against the plaintiff on a threshold motion. But even so, the Plaintiff has made a more than sufficient showing at the pleadings stage to preclude a pleadings-based determination. Finally, the general jurisdiction

section of Defendants' motion is a strawman. Plaintiff has never asserted general jurisdiction and the Amended Complaint pleads only specific jurisdiction. The Court need not address it.

1. **The "Independent Contractor" Label and Defendants' Self-Serving Declarations Cannot Carry a Threshold Motion.**

Defendants' entire agency argument rests on two devices, and both fail at this stage.

*First*, Defendants attempt to disclaim *agency* by pointing to language in the contracts that label the parties as *independent contractors*. This argument is wrong for two reasons. As an initial matter, explicit contractual language disclaiming agency (which this is not), is not controlling, *Nickel v. Evangelical Lutheran Good Samaritan Soc'y*, No. 417CV00126SMRHCA, 2017 WL 5633300, at *4 (S.D. Iowa June 27, 2017), and the agency determination is instead "made after an assessment of the facts of the relationship and the application of the law of agency to those facts." *Hand v. Beach Ent. KC, LLC*, 456 F. Supp. 3d 1099, 1130 (W.D. Mo. 2020). Next, and more fundamentally, Defendants improperly conflate an *employee* analysis with an *independent contractor agency* analysis. The two are not mutually exclusive, and "an independent contractor who is not an employee of a principal can nevertheless still be that principal's agent." *Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1189 (9th Cir. 2002); *Soukup v. Chicago, Cent. & Pac. R.R. Co.*, No. C16-0152-LTS, 2018 WL 6356661, at *6 (N.D. Iowa Aug. 15, 2018) (quoting *Brown v. United Fire & Cas. Co.*, 432 N.W.2d 708, 710 (Iowa Ct. Ap. 1988) for the proposition that "[a] person can be both an agent and an independent contractor.").

*Second*, Defendants ask the Court to credit the Subia and Martinez declarations over Plaintiff's well-pleaded allegations and Defendants' own documents contractually evidencing control. On a Rule 12(b)(2) motion without an evidentiary hearing, that is exactly backwards, since all factual disputes must be resolved in the Plaintiff's favor. This Court has already declined to credit the Subia declaration over Plaintiff's sworn account once, holding that

8

Plaintiff's evidence "trumps Subia's declaration" at this stage. There is added reason for caution now. The Subia declaration originally swore that HIK had located "no" calls from Plaintiff, yet HIK now concedes it later found four recorded calls transferred to it. It also perplexingly states that the records of these calls "led Plaintiff to pursue other potential defendants." (ECF 53 at 8 n.1.) A declaration that has already been shown to be incomplete is a particularly poor basis on which to resolve disputed facts against the non-movant. And, just as before, no declaration from Mr. Reese, the one HIK witness with personal knowledge of the answered call, has ever been offered. The Court should not resolve the contested, document-laden question of agency on these interested, demonstrably incomplete affidavits.

Agency is, moreover, a "question of fact ordinarily determined by the trier of fact." *Northland Cas. Co. v. Meeks*, 540 F.3d 869, 872 (8th Cir. 2008). The degree of a principal's control over a telemarketing partner is the sort of issue that turns on evidence developed in discovery, much of it "peculiarly within the possession and control of the defendant." *Guadian v. DebtBlue LLC*, No. EP-23-CV-329-KC, 2024 WL 5184488, at *3 (W.D. Tex. Apr. 16, 2024). It is therefore little surprise that courts addressing disputed questions of agency in the TCPA context typically hold that this is a jury question and deny even summary judgment on this basis. *See Katz v. HIK Bank, SB*, No. 22 C 5277, 2026 WL 636723, at *6-12 (N.D. Ill. Mar. 6, 2026). At the pleadings stage, Plaintiff need not plead or prove the precise mechanics of control. He need only plead facts giving rise to a reasonable inference of control. He has done so under each of the three recognized theories.

**2. HIK and Alvarado are Vicariously Liable Under Actual Authority.**

Under the federal common law of agency that governs TCPA claims, a corporation that contracts out its telemarketing "may be held vicariously liable . . . for violations of either section 227(b) or section 227(c) . . . committed by third-party telemarketers," including under a theory of

actual authority. *In re DISH Network*, 28 F.C.C. Rcd. 6574, 6574, 6577 (2013). Actual authority may be "express" or "implied," Restatement (Third) of Agency § 2.01, and it "does not require the principal to specify the singular acts for which . . . authority exists as long as the acts are incidental to or reasonably necessary to accomplish what is authorized." *John v. Keller Williams Realty, Inc.*, No. 619CV1347ORL40DCI, 2020 WL 10502631, at *2 (M.D. Fla. Feb. 4, 2020). The hallmark of actual authority is the principal's right to control the agent, including the power to give interim instructions. Restatement (Third) of Agency § 1.01 cmt. f.

HIK's own contract supplies that control. HIK is the advertiser and end purchaser of telephone call transfers and engaged Alvarado to deliver "Leads, Calls, and Redirects." Through Insertion Orders, HIK dictated the campaign's "pricing, vertical, filters, state/geography, volume caps, exclusivity, and return policies." (ECF 45 ¶ 59, 63.) That is direction of the very parameters of the calling, including which consumers to target, in which states, in what volume, and on what terms. HIK could reject nonconforming leads and could terminate the relationship at will on thirty days' notice. (*Id.* ¶ 63-64.) And HIK's contract required its partners to perform "in compliance with applicable laws, including TCPA," and to indemnify HIK for TCPA violations, provisions that, far from disclaiming control, presuppose that telephone solicitation would occur on HIK's behalf and that HIK was directing how it was to be done. (*Id.* ¶ 60, 62.) A bargained-for, TCPA-specific indemnity clause shows HIK affirmatively contemplated that the contract would potentially expose it to TCPA claims based on calls being made in its campaign.

Defendants' contention that a contractual command to "comply with the law" defeats agency (ECF 53 at 12) has it exactly backwards, and courts have repeatedly rejected it. A provision regulating *how* an agent markets is not a prohibition but an affirmative recognition that the marketing will occur and an instruction on how to do it. *See Moore v. Club Exploria, LLC*,

No. 1:19-CV-02504, 2025 WL 2755076, at *11-12 (N.D. Ill. Sept. 26, 2025) (holding that, under federal common law, "actual authority may be either express or *implied*" and that contractual instructions to generate live transfers in compliance with the law demonstrated implied control). A clause directing how an agent markets and requiring that marketing to comply with outbound telemarketing regulations presupposes that outbound telemarketing will occur on HIK's behalf and instructs on its manner, which is the opposite of an uninvolved vendor relationship. HIK did not merely permit telephone solicitation by Alvarado, it bought the product of that solicitation by the thousands, set its terms, and reserved the right to reject and terminate.

Defendants' reliance on *Day*, *Callier*, and *Cunningham* is misplaced for the reason this Court already gave and for additional reasons discovery has now supplied. Those cases involved bare contractual permissions to sell a defendant's product (like car warranties), with no control or involvement over the calling and no connection between the named defendant and the calls. In *Callier*, for example, each broker conducted and operated its own marketing campaigns to obtain potential referrals to send to the defendant. *Callier v. Wide Merch. Inv., Inc.*, 671 F. Supp. 3d 736, 744 (W.D. Tex. 2023). Here, by contrast, HIK *directed* precisely the types of calls to be placed on its behalf by dictating their criteria, including geography, filters, and volume, reserved the right to reject those leads, paid for them per transfer, and, by HIK's own admission, received leads that "originate solely from Health Choice Now." (ECF 45 ¶ 57.) This is the controlled, directed, exclusive arrangement that *Callier* itself distinguished from the cases finding agency. 671 F. Supp. 3d at 743-44. Each of those cases, moreover, was decided on decidedly different records, not, as here, on the pleadings favoring Plaintiff or the Court's prior ruling.

### 3. HIK and Alvarado are Vicariously Liable Under Apparent Authority.

Apparent authority arises from the principal's manifestations to a third party that supplies a reasonable basis for that party to believe that the principal has authorized the alleged agent to

11

do the act in question. Restatement (Third) of Agency § 2.03; *Banks v. Pro Custom Solar*, 416 F. Supp. 3d 171, 174 (E.D.N.Y. 2018). It is assessed "from a third party's perspective" and a court must decide "whether that conduct reasonably gives the appearance that an agent is authorized to act." *Banks*, 416 F. Supp. 3d at 174. This Court has already found that Plaintiff offered sufficient facts that Reese acted with HIK's "actual or apparent authority" when he solicited Plaintiff. (ECF 29 at 5.) That finding is dispositive of apparent authority and is only reinforced now.

From Plaintiff's perspective, the call *was* HIK's call. The person who spoke to Plaintiff identified himself as Timothy Reese "with Health Insurance King Agency," solicited Plaintiff for HIK's insurance, and directed him to HIK's own website. Reese is HIK's employee and HIK's licensed Iowa producer. Those manifestations, HIK's name, HIK's products, HIK's website, delivered by HIK's own licensed agent, "could reasonably give the appearance that [HIK], the purported principal, authorized [the callers], the purported agent, to initiate the [calls] on its behalf." *Banks*, 416 F. Supp. 3d at 174-75. The FCC's illustrative indicia of apparent authority, "[t]he authority to use the seller's trade name, trademark and service mark" and access to the seller's systems, are present, and their presence "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *In re DISH Network*, 28 FCC Rcd. at 6592-93 (cleaned up). Defendants cannot carry this burden here or overcome pled inferences.

### 4. HIK and Alvarado are Vicariously Liable Under Ratification.

Ratification is the "affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) (quoting *Restatement*, § 4.01(1)). A principal can ratify his agent's actions either by not repudiating them or by accepting their benefit. *Tashman v. Advance Auto Parts, Inc.*, 63 F.4th 1147, 1156 (8th Cir. 2023). A principal ratifies where it has

12

knowledge of material facts *or* is "willfully ignorant" of them, that is, where it "had knowledge of facts that would have led a reasonable person to investigate further, but . . . ratified without further investigation." *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1075 (9th Cir. 2019) (quoting *Restatement*, § 4.06 cmt. d). The FCC has long held that a seller is responsible "if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and . . . failed to take effective steps within its power to force the telemarketer to cease that conduct." *In re DISH Network*, 28 F.C.C. Rcd. at 6592.

The Amended Complaint pleads ratification on both knowledge and willful ignorance. HIK *accepted the benefit* of the calls. It took hundreds to more than a thousand transferred calls per week, paid roughly $50 each, and monetized them by soliciting the consumers for its insurance. And HIK and Alvarado were, at a minimum, willfully ignorant. Their own contract imposed TCPA compliance obligations, termination rights, and indemnity, yet HIK never investigated how the calls were generated, Alvarado never disciplined its partners, and the relationship was never terminated, despite the contractual right to do so. A reasonable seller whose agents are making thousands of call transfers per week on its behalf would investigate the methods by which those calls are generated, particularly given the explicit TCPA compliance obligations in its own contract, but HIK and Alvarado did not. That is textbook ratification through, at the least, willful ignorance. *Henderson*, 918 F.3d at 1075; *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 833 (N.D. Ill. 2016) (holding a reasonable jury could find that a seller ratified by accepting the benefits of unlawful calls); *Katz*, 2026 WL 636723, at *11 (same, holding that evidence showed defendant knew it was receiving call transfers from uninterested individuals).

Defendants' retort, that they could not have known of any TCPA violation before receiving notice of suit, merely raises a fact question, as in *Katz*, of what Defendants knew and when they knew it. Whether HIK and Alvarado had actual knowledge or were willfully ignorant of how the calls they sponsored and monetized were being generated is usually reserved for the factfinder, *see Kristensen*, 879 F.3d at 1014-15, and certainly cannot be resolved against Plaintiff on the pleadings. The Amended Complaint alleges actual knowledge and a minimal failure to investigate in the face of red flags. Those allegations are taken as true at this stage.

### 5. Health Choice Was HIK's SubAgent Through Alvarado.

HIK also had an agency relationship with Health Choice, who was its subagent. "A person or entity that is appointed by an agent to perform functions assigned to the agent by the principal is known as a 'subagent.'" *Griffin v. Safeguard Props. Mgmt., LLC*, No. 18 C 5755, 2020 WL 6118572, at *3 (N.D. Ill. Oct. 16, 2020). Agents authorized to do so may "appoint subagents to perform those tasks or functions the agent has undertaken to perform for the principal." *Id.* Consequently, "an action taken by a subagent carries the legal consequences for the principal that would follow were the action instead taken by the appointing agent." *Id.*

A reasonable jury (to say nothing of the pleadings) could find that HIK, Alvarado, and Health Choice were linked through a cascade of agent and subagent relationships and are each liable for Health Choice's actions. *See id*; *Desai v. ADT Security Systems., Inc.*, 78 F. Supp. 3d 896 (N.D. Ill. 2015). HIK hired Alvarado to deliver call transfers. Since Alvarado did not make calls itself, the very function HIK hired Alvarado to perform necessarily contemplated use of a downstream caller, Health Choice. The relevant inquiry is thus *not* whether HIK had a direct contract with Health Choice, but whether Health Choice was appointed to perform the call transfer function Alvarado had undertaken to perform for HIK. *Katz*, 2026 WL 636723, at *9 ("Consumer Nsight is not a telemarketing firm and does not initiate telemarketing calls. So a

14

reasonable jury could find that Consumer Nsight reasonably believed that, by hiring Consumer Nsight for call transfers, Allied was consenting to Consumer Nsight using a company like Iconic to do the actual calling.").

**C. Independently, HIK Is Subject to Jurisdiction and is Liable as the Seller "On Whose Behalf" the Calls Were Placed Under 47 U.S.C. § 227(c)(5).**

Even if the Court were to find Plaintiff's agency pleading insufficient (it should not), HIK is answerable for the calls, and therefore subject to jurisdiction arising from them, as the seller "on whose behalf" they were made. The TCPA, at 47 U.S.C. § 227(c)(5), creates a private right of action for any person who receives more than one call "by *or on behalf of* the same entity in violation of the regulations." 47 U.S.C. § 227(c)(5) (emphasis added). That "on behalf of" language extends responsibility *beyond* the entity that physically dialed to the entity whose goods or services were being marketed. That statutory "on behalf of" text is the end of the road for HIK. This case is, on its face, a paradigm "on behalf of" case. Health Choice called Plaintiff in its position as an entity hired by Alvarado, and in turn HIK, to make calls that were transferred to HIK. Health Choice's economic interest, and HIK's, was in generating a transaction that would result in a HIK transfer and, ultimately, a HIK sale, sold by HIK's own employees. The calls were thus placed "on behalf of" HIK under any reasonable reading of that phrase.

That plain reading of the statutory text is also what the FCC has long held. Over thirty years ago, the FCC explained that its TCPA "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 10 F.C.C. Rcd. 12391 (1995). The FCC reaffirmed that principle in *Dish Network*, explaining that sellers may not avoid TCPA liability "by outsourcing its telemarketing activities to unsupervised third parties," because that would "leave consumers in many cases without an effective remedy for

15

telemarketing intrusions." 28 FCC Rcd. at 6588. The FCC specifically held that "because sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy." *Id.* (cleaned up). That is a direct quote from the FTC's own observation, and it is exactly the problem the "on behalf of" language was drafted to solve, for precisely such a situation as here.

The Northern District of Illinois addressed this very issue in *Katz*.

The *Katz* court opined, but decided it did not need to reach the issue, that, in light of the Supreme Court's recent decision in *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), "§ 227(c)(5) includes language that explicitly extends vicarious liability to violations under that subsection: it allows 'persons' to bring an action if they have 'received more than one telephone call within any 12-month period <u>by or on behalf of the same entity</u> in violation of the regulations.'" 2026 WL 636723, at *7. Under *McLaughlin*, a district court "is not bound by the FCC's interpretation of the TCPA," and should instead "interpret the statute as courts traditionally do under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *Id.* at *6. Although the *Katz* court agreed with the FCC that a seller can be vicariously liable under § 227(c) under general agency principles, after analyzing the statutory text independently after *McLaughlin*, it also opined that the FCC's "on behalf of" reading of § 227(c)(5) extended to create an even *broader* liability standard than common law agency. *Id.* That analysis applies here with equal force.

The *Katz* Court cited favorably to the *Dish Network* dissent, which argued the FCC majority was not *broad enough* in recognizing vicarious liability, and which read § 227(c) as creating an even *broader* liability standard than common law agency. *See In re DISH Network*, 28 FCC Rcd. at 6602 (Pai, Comm'r, dissenting in part) ("[U]nder section 227(c), third-party

16

liability exists whenever a telemarketer initiates a call on a seller's behalf, even if that telemarketer is not under the seller's control."). In *Dish Network*, Commissioner Pai expressly explained why it was "implausible as a matter of statutory construction" to impose the vicarious liability standards required by Section 227(b)'s silence on the scope of third-party liability applicable to Section 227(b) violations, as opposed to the express language addressing 227(c) violations. *Id.* The presence of broader language in Section 227(c) is strong evidence that Congress did not intend a one-size-fits-all approach. *Id.* And for that matter, the FCC majority expressly left that broader reading that Commissioner Pai indicated open. *See id.* at 6586 (leaving open "the possibility that we could interpret section 227(c) to provide a broader standard of vicarious liability for do-not-call violations").

After *McLaughlin*, courts are no longer bound to accept the FCC's 2013 Dish Network interpretation as dispositive, nor accept its one-size-fits-all approach. Critically, *McLaughlin* cuts both ways. Courts must now independently interpret the text of the statute, and the statutory "on behalf of" text is, if anything, more favorable to Plaintiff than the FCC's agency-based framework. Post-*McLaughlin* decisions have agreed that § 227(c)(5)'s "by or on behalf of" language independently supports seller liability as a matter of statutory construction. *See Katz*, 2026 WL 636723, at *6–7; *Moore*, 2025 WL 2755076, at *10–11 (N.D. Ill. Sept. 26, 2025) (finding post-*McLaughlin* that a seller may be vicariously liable for third-party violations of § 227(b) and conducting its own independent statutory analysis to reach that conclusion).

On the Amended Complaint's allegations, HIK is the seller "on whose behalf" every call at issue was placed. The entire funnel existed to deliver insurance customers to HIK: Health Choice Now generated the calls, Alvarado transferred them, and HIK paid for and answered them to sell its own insurance. Every successful solicitation put money in HIK's pocket. HIK

17

paid for each call transferred to it, and HIK had its own employees sell its own insurance products. That is sufficient for seller liability under the plain language of § 227(c)(5), independent of whether HIK exercised day-to-day control over the calls, and whether or not the Court reaches Plaintiff's three classical agency theories. Because the calls were directed into Iowa on HIK's behalf to sell HIK's product, HIK has purposefully availed itself of this forum.

**D. At a Minimum, the Jurisdictional Question Is Enmeshed With the Merits, and the Court Should Deny the Motion.**

Plaintiff respectfully submits that he has made out a *prima facie* case and that the motion should simply be denied. But if the Court harbors any doubt, the answer is not dismissal. The disputed question, whether HIK and Alvarado are responsible for the calls Health Choice Now generated, is the same question that decides the merits. The Eighth Circuit treats such enmeshed disputes as questions to be resolved at an evidentiary hearing or trial, not on a threshold motion. *Magee*, 9 F.4th at 682. This Court reached the same conclusion in its prior Order, holding that the jurisdictional question was "sufficiently intertwined with the issues of class certification and the merits" that it would not even segment discovery. (ECF 29 at 7.)

The Court also identified what a TCPA plaintiff must show, and Plaintiff has now shown it: "it is difficult to understand what more a plaintiff like Carter could do to establish personal jurisdiction in a TCPA case beyond asserting (a) that he received a phone call directed to the forum state (b) from an insurance producer employed by Health Insurance King (c) for the purpose of trying to sell him insurance from Health Insurance King." (*Id.* at 6.) Plaintiff has alleged all three, and has added the documentary and evidentiary chain showing the calls were generated and transferred on HIK's behalf. To the extent any factual conflict on Defendants' declarations or other arguments remains, it should be resolved through an evidentiary hearing,

18

not by crediting those declarations over Plaintiff's well-pleaded allegations and Defendants' own admissions.

## V.  CONCLUSION

For the foregoing reasons, Defendants Health Insurance King Agency, LLC and Alvarado Marketing Group, Inc.'s renewed motion to dismiss for lack of personal jurisdiction should be denied. In the alternative, Plaintiff respectfully requests that the Court hold an evidentiary hearing before resolving the disputed facts on which the motion depends, and grant leave to amend to the extent the Court finds any aspect of the Amended Complaint insufficient.

RESPECTFULLY SUBMITTED AND DATED this June 2, 2026.

/s/ Anthony Paronich
Anthony Paronich
Email:  anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone:  (617) 485-0018
Facsimile:  (508) 318-8100

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*Attorneys for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

We hereby certify that on June 2, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties who have appeared by operation of the court's electronic filing system.

*/s/ Anthony Paronich*
Anthony Paronich

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong